Davis, Judge,
delivered the opinion of the court:*
The plaintiff, then a civil service employee of the United States and a veteran preference eligible under the Veterans’ Preference Act of 1944, 5 U.S.C. § 851 et seq. (1958), was separated from the Government service at the close of April 30, 1959, when his position as medical photographer, GS-Y, at the Veterans Administration Hospital in Little Bock, Arkansas, was abolished. The plaintiff contends that his separation was unlawful, and sues for back pay. He alleges, primarily, that his separation from the Government service was arbitrary and capricious, because it resulted from a “scheme * * * arranged between personnel officials of the Little Bock Hospital and plaintiff’s then assistant to secure plaintiff’s separation, and then obtain the promotion of the assistant to the position.”
The chain of events which ultimately led to the abolition of the plaintiff’s position began around the first of June 1958, when the Veterans Administration Hospital in Little Bock received from the headquarters of the Veterans Administration in Washington, D.C., a “Primary Fund Allocation” indicating the amount of money tentatively allotted to the hospital for the fiscal year 1959, which was to begin on July 1, 1958. As it appeared that this allocation of funds would *104 not be sufficient to support the then existing level of activities and personnel at the hospital throughout the fiscal year 1959, the Manager of the hospital, Dr. Delmar Goode, on June 3, 1958, appointed a committee of hospital officials to “make a study of personnel requirements for FY 1959 and to make recommendations to me as to the average employment which can be supported by our FY ’59 appropriation for Personal Services.” The directive to the committee further stated that “If it is found that a reduction in personnel is necessary, recommendations should also be made as to areas of reduction which will least reduce the quality of medical care.”
James M. Eitchie, the Assistant Manager and Budget Officer of the Little Eock Hospital, was designated to serve as chairman of this committee. The other members were the Fiscal Officer, the Personnel Officer, and the Director of Professional Services at the hospital.
The Eitchie committee proceeded to make a study of the personnel situation at the hospital in relation to the prospective availability of funds for the fiscal year 1959 and the needs of the hospital. This involved a survey of the staffing of the entire hospital, with the objective of making recommendations that would provide a well-balanced staff, within the limits of the prospective availability of funds for salaries. The committee interviewed the heads of the principal departments of the hospital, it compared the staffing and workload of the Little Eock Hospital with other Veterans Administration hospitals of similar size and functions, and members of the committee visited some of the hospital units for personal observations.
One of the Little Eock Hospital units considered by the Eitchie committee in its survey was the Medical Illustration Service, which was headed by the plaintiff. This service was responsible for the taking and processing of photographs, both in black-and-white and in color, for use by the various medical services as visual teaching aids, for publications, and for patients’ records. In addition, the operation of the Medical Illustration Service involved certain administrative duties, such as preparing reports, keeping records, and requisitioning supplies.
*105 The plaintiff had been appointed Chief of the Medical Illustration Service at the Little Bock Hospital on November 7,1950. His original appointment had been a temporary one in the grade of photographer (general), GS-7, but on August 2,1953, his appointment had been converted to medical photographer, GS-7, in the competitive civil service. As the Little Bock Hospital was newly opened in 1950, the plaintiff had been the first chief of — and for more than a year he had been the only person assigned to — the Medical Illustration Service. In 1951, approximately 13 months after the plaintiff became Chief of the Medical Illustration Service, another photographer, Fred Jungkind, was added to the Service as the plaintiff’s assistant. Mr. Jungkind, like the plaintiff, was a veteran preference eligible. At the time of the survey by the Bitchie committee in June 1958, the plaintiff was still serving as Chief of the Medical Illustration Service in the GS-7 position previously mentioned, and Mr. Jungkind was acting as the plaintiff’s assistant in a photographer position classified in grade GS-6.
For the Medical Illustration Service, the Bitchie committee concluded that the volume of photographic work at the Little Bock Hospital could be handled by one photographer, if the administrative duties performed by the personnel of that Service were transferred elsewhere, and, therefore, that one of the two photographer positions could be eliminated without unduly impairing the photographic service rendered to the various departments of the hospital. The committee decided to recommend that the plaintiff’s position be eliminated and that the administrative duties previously performed by the personnel of the Medical Illustration Service be transferred to the office of the Director of Professional Services.
The committee selected the plaintiff’s position for elimination, rather than the position of the plaintiff’s assistant, Fred Jungkind, for two reasons: first, the members of the committee believed that Fred Jungkind, a younger man than the plaintiff (who was then more than 64 years of age), would be better able than the plaintiff to carry on alone the photographic work of the Medical Illustration Service; and, second, the elimination of the plaintiff’s GS-7 position would *106 effect a somewhat greater saving than the elimination of Fred Jungkind’s GS-6 position.
After having completed its study, the committee submitted a report to the Manager of the hospital on June 23, 1958. The report stated that the “Primary Fund Allocation” for the fiscal year 1959 was inadequate to support the then existing level of hospital operations, and explained how the deficiency in funds affected the various hospital operations. The report then made various recommendations as to the actions that were needed, including a suggestion concerning 10 positions which might be abolished. The plaintiff’s position was one of those tendered for abolition.
. Upon considering the report of the Ritchie committee, Er. Goode, the Manager of the hospital, decided not to act favorably on the recommendation for abolition of positions, including that occupied by the plaintiff. Instead, it was Dr. Goode’s view that the necessary savings to avoid a deficit in the fiscal year 1959 could be effected by leaving positions unfilled as they became vacant due to normal turnover during the ensuing fiscal year.
A “freeze” was imposed by the management of the hospital on the filling of positions that became vacant during the fiscal year 1959. No position that became vacant could be filled without a careful review by the Personnel Officer, and, in connection with most vacancies that occurred, the positions could not be filled without the personal approval of the Manager. Various positions identical with or similar to the positions which the Ritchie committee had recommended for abolition became vacant during the course of the fiscal year 1959, and they were left unfilled for the remainder of the fiscal year. In effect, therefore, the recommendations of the Ritchie committee for abolition of positions had been carried out substantially by the end of February 1959, except for the plaintiff’s position.
Dr. Goode resigned as Manager of the Little Rock Hospital effective at the end of February 1959. James M. Ritchie, who had served as chairman of the Ritchie committee in June 1958, was appointed to succeed Dr. Goode effective March 1, 1959, with the title of Acting Manager of the hospital.
*107 On March 2, 1959, Mr. Ritchie, in his new capacity as Acting Manager, instructed the Personnel Officer that steps should be taken to complete the implementation of that portion of the Ritchie committee’s report which had not yet been carried into effect. This meant the abolition of the plaintiff’s position. Elimination of this slot involved (among other things) advance contacts with the Civil Service Commission’s regional office ait Dallas, Texas, and with the headquarters of the Veterans Administration in Washington, D.C., and such contacts were made. During the course of a long-distance telephone conversation sometime between March 6 and 16, 1959, with an official of the VA headquarters, Mr. Ritchie, when asked about the reason for the proposed abolition of the plaintiff’s position, replied that the plaintiff’s assistant could handle the photographic work by himself, and that the plaintiff was eligible for retirement.
On March 28, 1959, Mr. Ritchie called the plaintiff to his office and handed him a written notice of the same date, informing him that his position would be abolished effective at the close of April 30, 1959. The operative paragraph of the notice was phrased in the following language:
1. Due to stringent fund conditions and in the need for a better balanced budget program, we find it necessary to abolish your position of Chief, Medical Illustration Service. Accordingly, this position you now occupy is being abolished April 30, 1959.
At the same time, Ritchie told plaintiff orally that his position was to be eliminated because of a stationwide shortage of funds and because a study of the Medical Illustration Service had revealed that one photographer could do the work.
Pursuant to this notice, the plaintiff’s position was abolished and the plaintiff was separated from the Government service effective at the close of April 30,1959. He received a lump-sum payment for his accumulated and accrued annual leave, which covered the period from May 1 until June 15, 1959.
Within less than 30 days after the receipt of his reduction-in-force notice, the plaintiff on April 17, 1959, appealed to the Civil Service Commission’s regional office at Dallas, *108 Texas, attacking bis prospective separation from tbe Government service as of April 80, 1959. A bearing was beld before an examiner of tbe Civil Service Commission in Little Bock on June 1, 1959. Nine days later, on June 10, the regional office of the Civil Service Commission rendered a decision that was unfavorable to tbe plaintiff.
Tbe plaintiff promptly took an appeal to tbe Civil Service Commission’s Board of Appeals and Beview on June 16, 1959, from the adverse action of the Commission’s regional office at Dallas. Tbe Board, in a decision dated September 4, 1959, affirmed tbe decision rendered previously by tbe Dallas regional office. On July 7,1960, the plaintiff, in effect, requested a reconsideration by tbe Civil Service Commission’s Board of Appeals and Beview. This request was denied by the Board on August 8,1960. Suit was filed in this court on April 17,1962.
Plaintiff’s major contention is that, as in Smith v. United States, 151 Ct. Cl. 205 (1960), bis separation did not result from a bona fide reduction in force, but was tbe offspring of a concerted scheme to get rid of him and to give his job to bis assistant, Jungkind. Tbe trial commissioner rejected this attribution of bad faith to tbe Government. He stated in his opinion:
“The evidence in the record does not support tbe allegation in tbe petition to tbe effect that the plaintiff’s position was abolished as the result of a ‘scheme * * * arranged between personnel officials of tbe Little Bock Hospital and plaintiff’s then assistant [Fred Jungkind] to secure plaintiff’s separation, and then obtain the promotion of tbe assistant to the position.’ While tbe evidence shows that Fred Jungkind actually was promoted to a higher grade after tbe plaintiff’s departure from tbe hospital, it is clear that this promotion was effected because of developments that occurred subsequent to March 23, 1959, the date on which the plaintiff received his reduction-in-force notice.”[1]
*109 This factual determination, made after a trial and on the basis of oral testimony, is, of course, entitled to great respect. See, e.g., J. G. Watts Constr. Co. v. United States, 174 Ct. Cl. 1, 10-11, 355 F. 2d 573, 579-80 (January 1966) ; Dodge Street Building Corp v. United States, 169 Ct. Cl. 496, 501, 341 F. 2d 641, 644-45 (1965). We are far from persuaded that it is wrong.[2] On the contrary, the record seems to us to show affirmatively that the motivation behind the abolition of plaintiff’s position did not stem from an improper desire to further Jungkind at Gibson’s expense, but rather from a combination of three wholly different factors: (i) a concern with the hospital’s budgetary position; (ii) a belief that only one photographer was needed to do the photographic work in the Medical Illustration Service, and (iii) a determination that Jungkind could handle the work better than plaintiff. These, and not a conspiratorial intrigue, were the springs of the separation.
It is settled that, absent bad faith or the kind of underhanded scheme plaintiff asserts, the hospital could decide with propriety to abolish Gibson’s job instead of Jungkind’s, and could rest that decision on the relative ability of the two men to handle the work by himself.[3] Management’s reasonable belief that the photographic workload could be carried by one employee was sufficient for elimination of one of the two positions. The Civil Service Commission regulations governing reductions in force authorized use of that corrective mechanism for “lack of work” (5 C.F.IÍ. § 20.2 (a) (1961)). Commission policy likewise permitted the agency to select which of the two separate jobs to erase, and to make that choice on the basis of the comparative capacity of the incumbents. It is conceded that nothing in Section 12 *110 of the Veterans’ Preference Act, 5 U.S.C. § 861 — the reduction-in-force provision — disabled the Commission from allowing employing agencies to make such a selection from among jobs which were not competing (because at different grade levels).
We will not decide whether or not the Medical Illustration Service actually required one or two photographers.[4] This was a managerial problem, entrusted to the hospital, and the executive decision was at least a reasonable one. Similarly, we will not resolve the discretionary question of whether Jungkind was better qualified to shoulder the work alone. On this record those were reasonable administrative choices on which this court will not give its own judgment or overturn the determinations of management. Umbeck v. United States, 149 Ct. Cl. 418, 428 (1960) ; Adams v. Humphrey, 232 F. 2d 40, 41 (C.A.D.C. 1955). Cf. Gadsden v. United States, 111 Ct. Cl. 487 490, 78 F. Supp. 126, 127-28 (1948) ; Guiness v. United States, 149 Ct. Cl. 1, 6 (1960), cert. denied, 363 U.S. 819. It follows that we cannot set aside the reduction in force on substantive grounds.
In his assault on the separation, plaintiff’s target of opportunity is that there was a basic procedural defect — a flaw in the notice given him by his superiors. The Civil Service Commission’s regulations required the notice of proposed removal to state specifically the reasons for the action.[5] Plaintiff’s notice said that it was necessary to abolish his position “Due to stringent fund conditions and in the need for a better balanced budget program.” The trial commissioner thought that the true reasons for the reduction in force were different from the stated grounds. He said (a) that “the true reason for the abolition of the plaintiff’s position was *111 the belief on the part of the hospital management that only one photographer was required to handle the photographic workload in the Medical Illustration Service and that the plaintiff’s assistant, Fred Jungkind, was better qualified than the plaintiff to handle the workload alone”; and (b) that “the budgetary situation at the hospital was not an important factor in the March 1959 decision of the hospital management to abolish the plaintiff’s position.” [6] The commissioner then held that, because of this discrepancy between the true reasons and those given to plaintiff, the Commission’s regulation was breached.
We think that in this case the trial commissioner applied the regulation too rigidly. If the written notice given to plaintiff had said explicitly that only one photographer was needed and the job was being wiped out for that reason, the Civil Service Commission’s notice requirement would undoubtedly 'have been satisfied, even on the trial commissioner’s view of the hospital’s motivation. Management would hardly have been required to go further and state expressly that plaintiff’s job was being abolished, rather than Jung-kind’s, because of greater faith in the latter’s capacity to continue as the sole photographer — that minor premise of the syllogism would have been obvious on a moment’s thought. But the evidence is clear that plaintiff was expressly told, on being handed the notice, that there was work enough only for one man. Mr. Bitchie, the Acting Manager, *112 informed Mr. Gibson orally that bis job was being ended because of budgetary considerations and because a study bad shown that one photographer could do the work. Plaintiff was thus given, at the same time as the written notice, the very reason the trial commissioner says he should have received. The phrasing of the written paper was explained in specific terms as a cessation in the need for two medical photographers. Plaintiff could not have been misled, and he was not misled.[7] Perhaps if the reason given orally had been far removed from that inscribed on the notice, it would be improper to consider the verbal ground as amplifying, explaining, or sharpening the written one. Here, however, there was an intimate connection. The elimination of a job because of a decrease in workload almost always comes about because there are insufficient funds to continue the position and at the same time to care fully for other pressing needs of the facility. The position is abolished in order to free money for other uses. In other words, “stringent fund conditions” and “need for a better balanced budget program” (the written reasons in this case) are normally related, and closely related, to a proposed reduction in the personnel of a unit with a lessened workload (the oral explanation). This record does not show plaintiff’s case to be an exception. Even though we assume arguendo, as the trial commissioner thought (see footnote 6, supra,), that in March 195& the immediate budgetary situation at the hospital was not an important factor in the hospital’s decision to abolish plaintiff’s position at that particular time, we certainly cannot say that long-run fiscal and budgetary conditions and programs were absent or remote. We must conclude, therefore, that the written reduction-in-force notice, as explained orally, was adequate to give plaintiff the true “reasons therefor” under *113 the Civil Service Commission’s regulation. There was no procedural violation.[8]
Plaintiff is not entitled to recover and his petition is dismissed.
FINDINGS of Fact
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and arguments of counsel, makes findings of fact as follows:
1. The plaintiff, Boas E. Gibson, sues for back salary, claiming that his separation from the Government service effective at the close of April 30,1959, was unlawful.
2. At the time of the events which gave rise to this litigation, the plaintiff held an appointment in the competitive civil service of the United States; and he was a preference eligible under the provisions of the Veterans’ Preference Act of 1944, as amended (5 U.S.C. § 851 et seq. (1958)), having served honorably in the Armed Forces of the United States both during World War I and World War II. His annual salary as a Government employee was $5,880.
3. (a) Beginning while he was a high school student and continuing through World War II, the plaintiff was interested in amateur photography. He took pictures for pleasure, and developed the photographs in his own darkroom.
(b) Following the plaintiff’s separation from the military service after the end of World War II, he completed a basic course hi commercial photography at the Woodworth School of Photography in Memphis, Tennessee. He graduated from this school in 1947.
4. (a) Effective August 3, 1948, the plaintiff received an excepted appointment as a volunteer worker (without compensation) at the Kennedy Veterans Administration Hospital hi Memphis, Tennessee. The plaintiff’s work as a volunteer at this hospital was in the field of medical photography.
(b) As of September 25,1950, the plaintiff received a probational appointment as a photographer (still), GS-4, at *114 tlie Kennedy Veterans Administration Hospital. He continued to fill this position through November 6, 1950.
5. (a) On November 7, 1950, the plaintiff was given a temporary appointment as a photographer (general), GS-T, at the Veterans Administration Hospital in Little Bock, Arkansas. Subsequently, on August 2, 1953, the plaintiff’s appointment was converted to an appointment as medical photographer, GS-7, in the competitive civil service.
(b) The plaintiff’s title at the Veterans Administration Hospital in Little Bock was Chief, Medical Illustration Service, and as such he was in charge of the photographic laboratory at the hospital. As the hospital was newly opened in 1950, the plaintiff was the first chief of — and for more than a year he was the only person assigned to — the Medical Illustration Service. This service was responsible for the taking and processing of photographs, both in black-and-white and in color, for use by the various medical services at the hospital as visual teaching aids, for publications, and for patients’ records. In addition, the operation of the Medical Illustration Service involved certain administrative duties, such as preparing reports, keeping records, and requisitioning supplies.
(c) Throughout his service at the Veterans Administration Hospital in Little Bock, the plaintiff’s efficiency rating was “satisfactory” or better. He received several awards and commendations on the basis of his photographic work at the hospital.
6. In 1951, approximately 13 months after the plaintiff became Chief of the Medical Illustration Service at the Veterans Administration Hospital in Little Bock, he was given permission to employ an assistant. The person selected for the new position was Fred Jungkind, who was also a veteran preference eligible. Mr. Jungkind was originally appointed to a position as photographer (still), GS-3. He was without previous experience in medical photography, and he was trained in this line of photographic work by the plaintiff after his employment at the Veterans Administration Hospital in Little Bock. Mr. Jungkind served as the plaintiff’s assistant in the Medical Illustration Service during the remainder of the plaintiff’s tenure as chief of this service.
*115 7. It was customary for the headquarters of the Veterans Administration in Washington, D.C., to submit to the Veterans Administration Hospital in Little Bock (as well as to other facilities of the Veterans Administration) sometime near the end of each fiscal year a “Primary Fund Allocation,” which indicated the amount of money tentatively allotted to the hospital for the forthcoming fiscal year. Officials of the hospital then prepared and filed with the VA headquarters a budget program for the ensuing fiscal year, showing the distribution of the tentatively allotted funds among the various activities which the hospital expected to carry on during the next fiscal year.
8. (a) On June 3, 1958, at about the time of the receipt by the Veterans Administration Hospital in Little Bock of its “Primary Fund Allocation” for the fiscal year 1959 (which was to begin on July 1,1958), Dr. Delmar Goode, the Manager of the hospital, announced the appointment of a committee by means of a memorandum containing the following language:
1. The persons named below are appointed as a committee to make a study of personnel requirements for FY 1959 and to make recommendations to me as to the average employment which can be supported by our FY ’59 appropriation for Personal Services.
2. If it is found that a reduction in personnel is necessary, recommendation should also be made as to areas of reduction which will least reduce the quality of medical care.
J ames M. Bitchie, Chairman
Lloyd C. Elliott
W. E. Vedder
Bertram L. Levy, M.D.
(b) Mr. Bitchie, chairman of the committee referred to in paragraph (a) of this finding, was the Assistant Manager and Budget Officer, Mr. Elliott was the Fiscal Officer, Mr. Vedder was the Personnel Officer, and Dr. Levy was the Director of Professional Services at the Veterans Administration Hospital in Little Bock.
9. In its budget program for the fiscal year 1959, dated June 6,1958, the Veterans Administration Hospital at Little Bock expressed serious concern about the deficiency in funds *116 allocated to tbe hospital for the fiscal year 1959 and its effect on hospital operations. Appended to the budget program was the following statement:
1. GENERAL STATEMENT: Due to the intricacies of the common services fiscal procedures involving the Inpatient and Outpatient Medical Programs as well as the VARO, we have had only a short time to assess our budgetary position as it pertains to each respective Program for FY 1959. The problems of financing a total medical care program for both inpatients and outpatients are compounded where deficiencies exist in the fiscal support available for both the 8400 and 8600 Programs. We view with considerable alarm the effects further drastic fiscal retrenchment will have upon our patient-care and hospital operations during FY 1959..
In order to meet minimal standards of patient care and plant maintenance and repair, additional funds to provide for the following deficiencies are urgently needed:
Staffing deficiencies_ $85,411.00
Deferred M&R_ 14,990. 00
Replacement and initial equipment_ 34,135.00
Additional amount to meet standard ration pattern— 10,118. 00
Consultants and attendings_ 8,000.00
Materials (expendable)_ 8,900.00
Total amount of deficiencies_$161,554. 00
We estimate that $302,000 would be required to meet acknowledged standards and criteria of staffing and maintenance.
2. PERSONNEL STAFFING: At the close of FY 1957 our on-duty journalized strength for both the 8600 and 8400 Programs was 682 FTE. The current on-duty strength is 655, or a reduction of 27 FTE. The PFA for FY 1959 will support an average employment of 649.6 for both Programs. This will require substandard staffing patterns in practically all departments. To meet minimal standards, the following positions should be added:
1 Neurosurgeon
1 Physician (Medical Service)
1 Psychiatrist 3 Staff Nurses
1 Laboratory Technician
2 Housekeeping Aides
1 Food Service Worker
*117 1 Plumber
1 Ward Secretary
1 Social Worker
1 Occupational Therapist
It is estimated that the additional personnel needed to meet minimum standards would require approximately $85,411.00.
3. CONSULTANTS AND ATTENDINGS: In order to conform with the budgetary limitations required by the PFA, it has been necessary to project a decrease of approximately $13,000 in the use of Consultants and Attendings. In order to meet the essential requirements and adequately support the residency training program, it is estimated that a minimum of $8,000 should be restored for this purpose.
4. EQUIPMENT: The essential operating costs and substandard staffing will not permit the projection of any initial or replacement of equipment durmg FY 1959. These requirements are outlined on a separate attachment accompanying the FY 1959 Budget Program.
5. DEFERRED M&R: On a separate listing, we have outlined essential deferred M&R requirements which cannot be financed within the PFA, and although this is a relatively new hospital, we have found it impossible to provide for other than essential operating exigencies during the past year. Except for funds specifically earmarked in the PFA for M&R Projects, this situation will continue during F Y1959.
6. RATIONS: The amount of money provided for raw ration costs during FY 1959 contemplates an allowance of approximately 7‡ below the standard ration pattern. In order to meet the Standard Ration Pattern, an additional amount of $10,118 will be needed.
7. COMMON SERVICES: During the past year, we have expanded the services and facilities available for the care of outpatients, and find that the PFA for the 8600 Program is insufficient to finance its proportionate share of these costs. As a result of having to reduce common services outlined in the budget projection for 8600 Program, we will have to reduce clinic services and facilities which will affect both the inpatient and outpatient operations.
10. (a) The committee appointed by the Manager of the Veterans Administration Hospital in Little Rock on June 3, 1958 (see finding 8), proceeded to make a study of the personnel situation at the hospital in relation to the prospective *118 availability of funds foi* the fiscal year 1959 and the needs of the hospital. This involved a survey of the staffing of the entire hospital, with the objective of making recommendations that would provide for the hospital a well-balanced staff within the limits of the prospective availability of funds for salaries. The committee interviewed the heads of the principal departments of the hospital, it compared the staffing and workload of the Little Bock Hospital with other Veterans Administration hospitals of similar size and functions, and members of the committee visited some of the hospital facilities for personal observations.
(b) With respect to the Medical Illustration Service, the committee concluded on the basis of its study that the volume of photographic work at the hospital could be handled by one photographer, if the administrative duties theretofore performed by the personnel of the Medical Illustration Service were transferred elsewhere; and, therefore, that one of the two photographer positions could be eliminated without unduly impairing the photographic service rendered to the various departments of the hospital. The committee decided to recommend that the plaintiff’s position be eliminated and that the administrative duties previously performed by the personnel of the Medical Illustration Service be transferred to the Office of the Director of Professional Services. In the committee’s view, the elimination of one position would aid in meeting the stringent financial situation confronting the hospital as the beginning of fiscal year 1959 approached. The committee selected the plaintiff’s position for elimination, rather than the position of the plaintiff’s assistant, Fred Jungkind, for two reasons: first, the members of the committee believed that Fred Jungkind, a younger man than the plaintiff (who was then more than 64 years of age), would be better able than the plaintiff to carry on the photographic work of the Medical Illustration Service alone; and, second, the elimination of the plaintiff’s GS-7 position would effect a somewhat greater saving than the elimination of Fred Jungkind’s position, which was then classified in grade GS-6.
(c) After having completed its study, the committee submitted a report to the Manager of the hospital on June 23, 1958. The report stated that the “Primary Fund Allocation” *119 for the fiscal year 1959 was inadequate to support the existing level of hospital operations, and explained how the deficiency in funds affected the various hospital operations. The report then made various recommendations as to the actions that were needed, including recommendations concerning positions which might be abolished, as follows:
8. Following the submission of the budget plan for FY 1959, the committee met to consider further action required to implement the plan on a realistic and sound operating basis. The following recommendations are submitted for your consideration:
a. That funds for C & A (0111-8400) be increased by $1,600 to provide minimal coverage.
b. That the amount tentatively restored to Pharmacy for drugs remain in this account.
c. That the cut in surgical supplies be restored by transferring the $1,000 temporarily distributed to “asset acquisitions” on the budget submissions.
d. That the Nursing Service be reduced by one FTE average employment (in addition to any other recommended cuts) if the new qualification standards are to be fully implemented.
e. That a “contingency” or “emergency” fund be established in the amount of $8,000 or $2,000 per quarter.
9. In order to implement the budget program as submitted, as well as the recommendations contained herein, the committee reviewed the staffing patterns of all services and divisions for the purpose of listing by priority ten positions which would involve the least impairment of patient care. The necessity for maintaining a budgetary balance in distributing budgetary deficiencies was also considered. As gradual retrenchment is required, it is the recommendation of the committee that the following positions be abolished in the order listed:

*120 10.Unless additional funds are made available at the beginning of the FY 1959, it is recommended that the presently projected average daily employment be reduced by three FTE. Since Central Office has directed that RIF notices are temporarily suspended, no immediate action is indicated.
11, Upon considering the committee report referred to in finding 10, the Manager of the Veterans Administration Hospital in Little Rock decided not to act favorably on the recommendation in paragraph 9 of the committee report concerning the abolition of positions, including the position of medical photographer, GS-7, occupied by the plaintiff. Instead, it was the view of the Manager that the necessary savings to avoid a deficit in the fiscal year 1959 could be effected by leaving positions unfilled as they became vacant due to normal turnover during the ensuing fiscal year. This turned out to be true, except for plaintiff’s position. See findings 12, 20(c).
12. With respect to the recommendations made in paragraph 9 of the committee report that is referred to in finding 10 (c), the following developments occurring during the fiscal year 1959 are pertinent:
(a) A “freeze” was imposed by the management of the hospital on the filling of positions that became vacant during the fiscal year 1959. No position that became vacant could be filled without a careful review of the situation by the Personnel Officer of the hospital, and, in connection with most vacancies that occurred, the positions could not be filled without the personal approval of the Manager of the hospital.
(b) A GS-5 recreation technician position in Special Services became vacant on or about July 15, 1958, and Special Services was not permitted to fill this position during the remainder of the fiscal year 1959. There were six authorized positions in Special Services for the fiscal year 1959, but that unit was required to operate with only five of the positions filled after July 15,1958.
(c) Late in December 1958, a clerk or clerk-typist was reassigned from the Medical Service to another part of the hospital, and this position was not filled again on a full-time basis.
*121 (d) In the Registrar Division, a position of clerk was vacated on August 23,1958, and this position was not filled.
(e) The Nursing Service was required to operate during the fiscal year 1959 with a maximum of 214 nurses, whereas there was an authorization for 216 positions in this service.
(f) The Physical Medicine and Rehabilitation Service had an authorization for 11 positions, but when a GS-7 occupational therapist position become vacant in September 1958 due to a resignation, this service was required to operate for the remainder of the fiscal year 1959 with a maximum of 10 positions.
(g) There was a decline during the fiscal year 1959 in the number of persons assigned to the Dietetic Service.
13. (a) Doctor Delmar Goode resigned as Manager of the Veterans Administration Hospital in Little Rock effective at the end of February 1959.
(b) James M. Ritchie was appointed to succeed Dr. Goode effective March 1, 1959, with the title of Acting Manager. Mr. Ritchie had served as chairman of the committee referred to in findings 8 and 10.
(c) At the time when Mr. Ritchie become Acting Manager of the Veterans Administration Hospital in Little Rock, 8 months of the fiscal year 1959 had passed and 4 months of the fiscal year remained. On the basis of the weekly financial reports which Mr. Ritchie, in his capacity as Budget Officer of the hospital, had been receiving through the previous months of the fiscal year, he believed that there was an insufficiency of funds to support the ongoing program of the hospital, and that the hospital faced a prospect of an operating deficit as of the end of the fiscal year. Mr. Ritchie was concerned about a possible violation of the so-called Anti-Deficiency Statute (31U.S.C. § 665 (1958)).
14. On March 2, 1959, Mr. Ritchie, in his new capacity as Acting Manager of the Veterans Administration Hospital in Little Rock, instructed the hospital’s Personnel Officer that steps should be taken to implement that portion of paragraph 9 of the committee report dated June 23, 1958 (see finding 10(c)), which had not already been carried out. See findings 11,12,13(c), 20(c).
*122 15. (a) After receiving the instructions referred to in finding 14, the Personnel Officer of the Veterans Administration Hospital in Little Rock wrote the following letter on March 2, 1959, to the Eighth U.S. Civil Service Eegion of the Civil Service Commission at Dallas, Texas:
We would like your interpretation on the case presented below:
The organizational structure of our Medical Illustration Laboratory is as follows:
Position Incumbent Retention subgroup SOD Photographer (Med.)_ Photographer (Med.). Boas E. Gibson_ Fred F. Jungkind.. I-A I-A 2-7 -1939 7-15-1948
The position of GS-7 Photographer is being abolished due to reduction of funds. A resume of the incumbent’s employment record is as follows:
Probational Appt., 9/25/50, Photographer GS-4, VAH, Memphis, Tenn.
Designation, 11/6/50, Photographer GS-4, VAH, Memphis, Tenn.
Temporary Appt. (CS Reg. 2.114A), 11/7/50, Photographer GS-7, VAH, Little Rock, Ark.
Conversion to Competitive Appt., 8/2/53, Photographer GS-7, VAH, Little Rock, Ark.
In applying retention preference regulation 20.5(b) (2), Zl-288-289, Federal Personnel Manual, and Chapter Rr-3-21, -22, FPM, we have determined that this GS-7 Photographer does not possess retreat or bumping rights to the GS-6 Photographer position.
An immediate reply is requested. Please mark your reply “Personal-Official. Do Not Open in Mail Room.”
(b) The Personnel Officer of the Veterans Administration Hospital in Little Rock subsequently received from the Eighth U.S. Civil Service Region information confirming his understanding that the plaintiff did not have retreat or bumping rights to Fred Jungkind’s GS-6 position.
16. (a) The plaintiff’s position was a “centralized” one which could not be abolished without the approval of the headquarters of the Veterans Administration in Washington, *123 D.C. Accordingly, Mr. Ritchie wrote the following letter to the YA headquarters on March 6,1959:
SUBJ: Abolishment of Centralized Position — Photographer (Medical) Chief, Medical Illustration Service, GS-1060-7, Pos. Number 5234-1240-0; Issuance of reduction-in-force notice to incumbent, Mr. Boas E. Gibson.
1. We propose to abolish the position listed above effective April 30, 1959. A comprehensive work utilization study confirms that the work load of our Medical Illustration Service can be effectively performed by the remaining Photographer (Medical), GS-1060-6. The administrative work in connection with the supervisory position is being assumed by the office of the Director, Professional Services. Because of stringent fund conditions and in the need for a better balanced budget program, the abolishment of this position is considered necessary.
2. Your concurrence is requested to proceed with this action.
3. Your concurrence is also requested for issuance of a notice of reduction-in-force to the incumbent, Mr. Boas E. Gibson, Retention subgroup I-A, Service computation date — February 7, 1939. Mr. Gibson does not possess retreat rights under the Commission’s Retention Preference Regulations. The incumbent of the GS-6 Photographer position is also in Retention subgroup I-A. Therefore, Mr. Gibson does not possess reassignment rights to this position.
4. We would appreciate an early reply.
(b) After the YA headquarters received the communication that is set out in paragraph (a) of this finding, an official of that office called Mr. Ritchie on the long-distance telephone and inquired about the reason for the recommendation that had been made respecting the abolition of the plaintiff’s position. Mr. Ritchie replied that the plaintiff’s assistant could handle the photographic work by himself, and that the plaintiff was eligible for retirement.
(c) Under date of March 16, 1959, the YA headquarters sent the following reply to the letter mentioned in paragraph (a) of this finding:
1. Your recommendation for abolishment of the position, Chief, Medical Illustration Service has been given careful consideration.
*124 2. Providing that suitable supervision and administrative support can be given, you are authorized to discontinue the centralized position of Chief, Medical Illustration Service.
3. If reduction-in-force action is taken you should provide necessary information to the Area Medical Director so that he may assist in developing placement opportunities.
17. (a) On March 23, 1959, Mr. Ritchie called the plaintiff to his office and handed the plaintiff a written notice of the same date, informing the plaintiff that his position as Chief of the Medical Illustration Service would be abolished effective at the close of April 30, 1959. The notice stated as follows:
1. Due to stringent fmid conditions and in the need for a better balanced budget program, we find it necessary to abolish your position of Chief, Medical Illustration Service. Accordingly, this position you now occupy is being abolished April 30,1959.
2. You will be continued in your present position in a full pay status through April 30, 1959. A lump sum payment covering unused annual leave in the amount permitted by existing regulations will be forwarded to you along with your unpaid salary.
3. This reduction in force is being conducted as prescribed by Veterans Administration and U.S. Civil Service Commission regulations and policies. If you desire further information concerning your case, the Personnel Officer will be glad to discuss it with you in detail. You will also be permitted to examine the records and files pertaining to your case and to study the applicable Civil Service and Veterans Administration regulations.
4. If you feel your rights have been violated, you have the right to appeal this action to the Regional Director, 8th U.S. Civil Service Commission, 1114 Commerce Street, Dallas, Texas, no later than ten (10) days after the effective date of this action by establishing a prima facie case (a) that the procedures prescribed by the Commission were not followed, or (b) that the action was effected for political reasons, except as may be required by law, or resulted from discrimination because of marital status or physical handicap. Also, you may appeal this action (within the ten-day time limit specified above) to the Administrator of Veterans Affairs, Washington, D.C., through the Manager, on the basis of the record. However, any of the previously mentioned as *125 pects of your case which are appealed to the Commission will not be reviewed by the Veterans Administration. A further explanation of your appeal rights may be obtained by consulting the Personnel Officer.
5. Since you are in Group I-A for retention purposes, you are entitled to placement rights as a Separated Career Employee. Your name will be placed on a Reemployment Priority List for placement in the Veterans Administration in the Little Rock area, and you are entitled to opportunities for placement which satisfy your rights until the placement is effected, or declined, or until expiration of two years from the effective date of the proposed action.
6. In addition, as a Separated Career Employee you will have the right to file applications for any two positions, (a separate application for each position) with each of the U.S. Civil Service Commission’s offices indicated below for priority certification and referral for displacement of indefinite employees any time from the date of this advance notice of proposed separation until 90 days after your last day of active duty.
a. Central Office of the U.S. Civil Service Commission, Washington 25, D.C.
b. Any Board of Examiners under the jurisdiction of the Central Office of the U.S. Civil Service Commission.
c. One Regional Office of the U.S. Civil Service Commission.
d. Boards of examiners filling positions in any one region.
7. Applications filed for placement as a Separated Career Employee must be made on Standard Form 57 and must be accompanied by a copy of this letter, setting forth the reasons for your termination, and a statement from this office that: (1) you are eligible for entry on the Veterans Administration Re-employment Priority List for this area, and that (2) there is no position available in the Veterans Administration in this area to which you are entitled to placement as a Separated Career Employee. This statement will be furnished you, if applicable, at a later date. The Personnel Officer will be available on any week day to give you full information concerning the preparation of applications for submission to the offices of the Civil Service Commission as outlined above.
8. We regret that this action is necessary and we want you to know that we appreciate the contribution you have made in assisting the Veterans Administration accomplish its mission. The personnel office will give *126 you information regarding your retirement benefits or refunds to which you may be entitled and will assist you in securing other employment when it is possible to do so.
(b) At the same time, Mr. Ritchie orally informed plaintiff that his position was to be abolished because of a sta-tionwide shortage of funds and because a study of the Medical Illustration Service revealed that one photographer could do the work.
18. Under date of April 17, 1959, the plaintiff appealed to the Eighth U.S. Civil Service Region by means of a letter stating as follows:
Please consider this as my appeal from the adverse administrative action set out in the attached letter from the Acting Personnel Officer, Veterans Administration Hospital, Little Rock, Arkansas (5234/135), dated March 23, 1959, subject: Reduction in Force Notice. I most urgently solicit your consideration of this arbitrary action which I believe to be in violation of the VA’s own announced policies relative to retention and cei'tainly not in keeping with the spirit or intent of the Veterans Preference Act.
In support of these contentions I want to set out the facts relating to this action which should not be viewed as the abolishment of a position but as its intended result — the termination of my services for which there is no grounds except for this artificial means of circumventing the law.
a. I am a veteran of two wars with in excess of 32y2 years of federal service. In September 1949 I was employed at the VA Hospital, Memphis, Tennessee, as a medical photographer. I was transferred to the VA Hospital, Little Rock, Arkansas, on November 7, 1950, as Chief of Medical Illustration Laboratory. My first duty was to set up the laboratory in this new hospital. In these positions I worked satisfactorily, as my efficiency and performance rating record will bear out.
b. The workload increased to a point where a photographic assistant was necessary. In December 1951, on my recommendation, Fred Jungkind was employed to assist me. Subsequent to that time he has worked under my direction doing similar work to mine in all phases of medical photography. He is a veteran but without the seniority which I have.
c. As Chief, Medical Illustration Service, CIS-7,1 was and am responsible for assignment of duties of the assist *127 ant and the preparation of both position descriptions. These position descriptions are identical with the exception of distribution of time which is reduced in the productive activities to provide for administrative duties. A copy of my position description is attached. A similar copy of my assistant’s position description can be secured from the hospital. Reference to Par. IB of my position description and a comparison of the two will validate my contention that these are identical positions except for the administrative duties. Both of our class titles are: Medical Photographer.
d. I have been informed by the present Acting Manager, Mr. James Ritchie, that on my termination it is their intention to employ a clerk in the medical illustration service to do some of the processing work. If this is done, then the administrative duties presently assigned to me, including supervisory responsibility must be assigned to the remaining medical photographer, making his position identical to my present position and advancing his grade from the present GS-6 to my GS-7.
It is an obvious subterfuge to establish this as a personnel action to abolish a position which in the normal course of business would not be abolished. If the workload warrants the reduction of personnel in my unit, a conceded management prerogative, then the position to abolish would be the junior position, and not the senior position with an obvious transfer of duties to the junior position. It is my understanding that generally the YA Dept of Medicine and Surgery is establishing a pattern in their medical illustration laboratories of a Chief, GS-9 or 8, with a clerk helper rather than an additional photographer. In no case is a junior being retained.
If a reduction in force is warranted, I petition your assistance in effecting one within the limits of the law and not by a personal action to terminate me in obvious disregard of my statutory rights as a veteran. If, on the other hand, there is any question of my ability to perform my duties after 11% years of satisfactory service, I ask that I be afforded the mandatory 90 day notice period and that the specific complaints be presented to me so that I might have an opportunity to defend myself.
I would appreciate the opportunity to have a personal hearing before a representative of your agency in connection with this appeal.
19. Pursuant to the notice dated March 23,1959 (see finding 17), the plaintiff’s position as Chief of the Medical Illustration Service at the Veterans Administration Hospital in *128 Little Bock was abolished, and the plaintiff was separated from the Government service, effective at the close of April 80, 1959. The plaintiff received a lump-sum payment for his accumulated and accrued annual leave, which covered the period from May 1 until J une 15,1959.
20. (a) On the basis of all the evidence in the record, it is found that the persuasive reason for the abolition of the plaintiff’s position was the belief of the hospital management that only one photographer was needed for the effective performance of the photographic work in the Medical Illustration Service, and that the plaintiff’s assistant, Fred Jungkind, could handle the work better than the plaintiff. The determination to eliminate one position was made in the light of the belief that the hospital would have insufficient funds for salaries and might face a deficit, as detailed in finding-18 (c).
(b) The financial saving for the fiscal year 1959 that was effected through the abolition of the plaintiff’s position was approximately $242, after faking account of the lump-sum payment to plaintiff for accumulated and accrued leave. In future years, the savings were, of course, greater.
(c) The Acting Manager of the Veterans Administration Hospital in Little Bock did not suspend or separate any personnel of the hospital, other than the plaintiff, during the fiscal year 1959 because of the financial situation at the hospital. However, as indicated in findings 11 and 12, normal attrition operated so that, in effect, the recommendations of the Bitchie committee respecting the abolition of positions had been carried out substantially by the end of February 1959, except for plaintiff’s position.
(d) The record does not support the plaintiff’s allegation that his position was abolished as a result of a scheme arranged between personnel officials of the hospital and Jung-kind to secure plaintiff’s separation and then obtain the promotion of Jungkind to the position.
21. On June 1, 1959, a hearing on the plaintiff’s appeal was held before a Civil Service Commission examiner in Little Bock, Arkansas. The plaintiff was present at the hearing and was represented by counsel. The plaintiff testi- *129 fled, and he also presented the testimony of two other witnesses.
22. On June 10,1959, the Eighth U.S. Civil Service Region rendered its decision on the plaintiff’s appeal. The decision stated in part as follows:
We have carefully reviewed the Commission’s file in Mr. Gibson’s case. This review discloses that Mr. Gibson was listed correctly on the retention register, was properly reached for reduction in force, and received groper notice to that effect. This finding takes into consideration the fact that Mr. Gibson’s name appears in retention subgroup I-A on a retention register prepared for the competitive level of Photographer (Medical), GS-T. Being the only employee occupying such a position, his was the only name on the register and when the agency abolished his position, he was reached for reduction-in-force action.
Mr. Gibson contends that the Veterans Administration Hospital should not have abolished his position but should have abolished the job occupied by Mr. Fred F. Jungkind. The Commission’s retention preference regulations provide, among other things, that an employing agency decides when to reduce the number of its employees, where to make the cuts, and how large a cut to make. These determinations are not subject to question by the Commission. Thus, in appellant’s case, the determination made by the Veterans Administration Hospital to abolish the position of Photographer (Medical) , GS-T, may not be questioned by this regional office.
The record shows that Mr. Fred F. Jungkind occupies the position of Photographer (Medical), GS-6. He is a retention subgroup I-A employee with ten retention credits. While Mr. Gibson is also a retention subgroup I-A employee with twenty retention credits, he may not displace Mr. Jungkind since he does not have retreat rights to the position. In this connection, the Commission’s retention preference regulations provide that an employee has the right to go back to a position from which he has been promoted through a “retreat” action provided he has more retention points than the employee currently occupying the position. While Mr. Gibson has more retention points than Mr. Jungkind, he, Mr. Gibson, was not promoted from the involved GS-6 position nor was he promoted through that position by means of a double or multiple promotion. Thus, as stated *130 above, the appellant does not have, placement rights to the position of Photographer (Medical), GS-6.
A review of the retention records discloses that the Veterans Administration Hospital has no positions available to which Mr. Gibson has mandatory placement rights. In view of this fact, and since the agency has complied with the provisions of the Commission’s retention preference regulations, it necessarily follows that Mr. Gibson’s separation was not improper. Thus, the appeal must be denied.
Since Mr. Gibson is a Group I employee, he may apply for placement assistance under the Commission’s Separated Career Employee Program. Details on this program are contained in the enclosed CSC Form 26.
23. On June 12, 1959, the plaintiff wrote a letter to the Eighth U.S. Civil Service Region, stating as follows:
On Monday June 1, 1959 the hearing in connection with my appeal was held. Mr. Smith from your office attended together with other representatives from the VA Hospital, and myself. Due to information that came out at that hearing' I thought that I ought to furnish you with some additional comments to clarify my position in this appeal. I believe that Mr. Smith’s record will show that a statement was made that one of the reasons that I was not being retained is that Mr. Ritchie, the Acting Manager, had not asked for money in his budget for the position of Chief of my Section. Another reason advanced was that I had not come up through the grades and thus was not eligible to retreat to a position of GS-6 level.
In regard to this latter reason I would like to point out that I was transferred from a position in the GS-4 level at the VA Hospital in Memphis, Tennessee to a GS-7 level at the VA Hospital in Little Rock, Arkansas when it was originally activated. I did not go through the grades 5 and 6; however, the fact that my assistant or the person being retained is now a GS-6 is, to my way of thinking, completely immaterial to this case, as is the point made about money for the position as Chief. I make this statement for the following reason:
For some time now the VA has been acting under a policy of eliminating an assistant’s position in similar Sections in various VA Hospitals. In all cases where they have reduced their personnel complement, the person retained has been reclassified to a GS-9. When the remaining position in any Section is reclassified, as I understand the law and regulations require, it must *131 be classified at the level to which the duties and responsibilities direct it. This means based on all of the precedents in the other hospitals and on my actual personal knowledge of the remaining position in my hospital, that this position will be reclassified to a GS-9.
So the action is obviously a maneuver to terminate my long tenure of employment by subterfuge. They cannot validly terminate it under a direct reduction in force procedure or by attempting to establish that I am not qualified or suitable for the position. I will appreciate it if you will take these things into consideration when evaluating the evidence presented at the hearing and otherwise presented in connection with my appeal.
24. By a letter dated June 16,1959, the plaintiff appealed to the Civil Service Commission’s Board of Appeals and Review, stating as follows:
Please consider this as my appeal from the decision of the Acting Regional Director, Eighth U.S. Civil Service Region, Dallas, Texas, to not interfere with my displacement at the Veterans Administration Hospital, Little Rock, Arkansas. This decision was announced in their letter of June 10, 1959, addressed to Mr. Claude B. Carpenter, Jr.
I believe my contentions are fully set out in their files which I understand will be forwarded to you.
In comment on paragraph four of their letter regarding retreat rights, I would like to point out that I was promoted from the position of Photographer GS-4 at the Kennedy Veterans Administration Hospital, Memphis, Tennessee, to Photographer GS-7 at the Veterans Administration Hospital, Little Rock, Arkansas.
I do not believe a Federal Agency may capriciously and arbitrarily circumvent the law affording Veterans’ Preference Rights by such subterfuge as this. Whether it be called reduction-in-force, abolishment of a position, or some other name, it stands as a personal action against me contrary to law and equity. I ask the Board of Appeals and Review, U.S. Civil Service Commission, to assist me in establishing this fact.
25. (a) On July 8, 1959, the Civil Service Commission’s Board of Appeals and Review wrote the Veterans Administration Hospital in Little Rock a letter stating as follows:
Reference is made to the appeal to the Board of Appeals and Review of Mr. Boas E. Gibson from the *132 decision of the Eighth Civil Service. Region, which sustained your action in separating him by reduction in force on April 30,1959.
The appeal file contains no indication of positions in other competitive levels, at or below the representative rate of the appellant’s former position (GS-7) occupied by persons in lower retention subgroups. If none such exist please so indicate. If there are such positions, please supply the information requested in paragraph 5 (a), (b) and (c) of the attached form letter which is identical to the inquiry directed to your agency by the Eighth Region on April 29,1959'.
Mr. Gibson has alleged that the use of reduction-in-force procedures in his case was a subterfuge to terminate him. The stated reasons for the abolishment of his position was “due to stringent fund conditions and . . . the need for a better balanced budget program.” The Board assumes that this statement means a lack of money. If that is not the case please explain what is meant by the quoted statement.
In addition to furnishing the above information, please identify other persons adversely affected by reduction-in-force action at the time of Mr. Gibson’s separation due to the above-quoted reasons (name, grade, and position title will suffice). . If Mr. Gibson was the only person adversely affected in the reduction in force, please indicate the monetary savings to your activity.
An early reply would be appreciated.
(b) The reply to the letter quoted in paragraph (a) of this finding was dated July 21, 1959, and stated:
Reference your letter of July 8,1959 addressed to Mr. W. E. Vedder, former Personnel Officer, VA Hospital, Little Rock, Arkansas, the following information is presented incident to the appeal to your authority by Mr. Boas E. Gibson to the decision of the Eighth Civil Service Region; which sustained the action of the Veterans Administration in separating Mr. Gibson by RIF on April 30,1959.
a. There were no other employees in other competitive levels GS-7 and below occupied by persons in lower retention sub-groups.
b. The hospital had two Photographers (Medical) in Grades GS-7 and GS-6, and the work load did not justify two, so management elected to abolish one of the positions because of lack of need.
*133 c. Mr. Gibson was the only person adversely affected by reduction in force. The monetary savings to the activity by this action was $5,880 per annum.
26. The Civil Service Commission’s Board of Appeals and Beview denied the plaintiff’s appeal in a decision dated September 4, 1959, which stated in part as follows:
The evidence in the appeal file reveals that you were in retention subgroup I-A with 20 retention credits, and that you were properly within reach in your competitive level for reduction-in-force action since you were the only person in the Veterans Administration Hospital occupying the position of Photographer (Medical), GS-1060-7.
Since you were in retention subgroup I-A and entitled to be considered for reassignment to other continuing positions in the Hospital commensurate with your rights under the Retention Preference Regulations, the Board of Appeals and Review considered whether any positions existed, for which you were qualified at or below the grade and pay of your former position, which were occupied by persons in lower retention subgroups. No such positions were found. The Board also considered whether any positions existed in the Hospital, from or through which you had been promoted during your Federal employment, occupied by persons having fewer retention credits. Again no such positions were found.
The Board carefully weighed your contention that your movement from a GS-4 Photographer position on November 7,1950 to the position of Photographer, GS-7 should be considered a multiple promotion and hence should entitle you to retreat to a Photographer, GS-6 position held by a person of lower retention standing However, the Board could not sustain that contention since you were clearly severed from the rolls of the Federal government on November 6,1950, when you resigned from your position as Photographer, GS-4, to accept a new and different type of appointment as a Photographer, GS-7, at the Veterans Administration Hospital in Little Rock, Arizona [sic].
In your appeal to the Board you characterized the reduction-in-force action as arbitrary and capricious, apparently because your agency decided to abolish your position rather than the position of Photographer (Medical), GS-1060-6. However, as stated "by the Eighth *134 Civil Service Región in its decision letter of June 10, 1959, when an agency determines that a reduction in force becomes necessary, it is free to determine the number and kinds of positions it will abolish. The Civil Service Commission does not ordinarily question the wisdom of these determinations. The Commission does have authority, however, to determine whether the employee in an abolished position, has been accorded his rights under the Retention Preference Regulations if as a result of the decision to abolish his position, the employee has been adversely affected and appeals to the Commission. The Board’s review of your appeal file has revealed no violation of your rights under the Retention Preference Regulations. Accordingly, the decision of the Eighth Civil Service Region is affirmed.
27. (a) Sometime around the first of October 1959, the plaintiff wrote a letter to the Honorable Eugene J. McCarthy, United States Senator from Minnesota and Chairman of the Senate’s Special Committee on Unemployment Problems, relative to the plaintiff’s unemployment due to the abolition of his position at the Veterans Administration Hospital in Little Rock.
(b) Senator McCarthy’s reply to the letter mentioned in paragraph (a) of this finding was dated October 12, 1959, and stated in part as follows :
The Committee on Unemployment Problems was established by the Senate to make a general study of unemployment conditions in the United States. It does not have the authority to investigate individual cases or to provide individual assistance. The Committee is only empowered to make general recommendations to the Senate on how to reduce the volume of unemployment and to ease the problems of the unemployed.
28. (a) On July 7,1960, the plaintiff wrote a letter to the Civil Service Commission’s Board of Appeals and Review, stating as follows :
It has been suggested to me by the Chief of the Visual Education, Veterans Administration, Washington, D.C., that if I didn’t think I got a square deal on being dismissed from my job as Chief of the Medical Illustration Laboratory, VA Hospital, Little Rock, Arkansas, to present new evidence, to your Commission.
*135 Tbe evidence is as follows: I have witnesses who are ex-employees and employees of the Veterans Administration Hospital in Little Bock, who will testify if called upon that I was the victim of a frame-up for my job by two members of the personnel of the Hospital at that time, the Assistant Manager at that time, and the present Medical Photographer of the Hospital, and a present member of the Department of Histopathology at the Hospital.
If you think this situation warrants your attention I shall appreciate hearing from you, and if you desire, further detailed information will be forwarded you.
(b) On August 8,1960, the Board of Appeals and Review replied as follows to the letter quoted in paragraph (a) of this finding :
In your letter of July I, 1960, you claim that you can produce new evidence relative to your separation by reduction in force on April 30, 1959, from the Veterans Administration Hospital, at Little Bock, Arkansas.
The Board has construed your letter as a request to reopen and reconsider its decision dated September 4, 1959.
In your letter you contend that in the action which adversely affected you, you were the victim of a “frameup” and that you can produce witnesses who will so testify. Aside from the fact that you have waited ten months since the Board issued its decision on September 4, 1959, to request reconsideration of your appeal, the Board notes that you made a somewhat similar contention while your case was under active consideration before the Eighth Civil Service Region and this Board but failed to sustain your contention by evidence.
The Board’s decision upholding the agency’s action in your case was based upon a careful evaluation of all pertinent information in the record. It is not found that your current request for further consideration of your case is supported by any showing that the previous determination was in error or by offer of pertinent new evidence or information that could not have been offered or submitted during the pendency of your appeal. The decision of the Board of Appeals and Review on September 4, 1959, stands as the final decision of the Commission and your administrative remedies were exhausted with that decision.
*136 29. (a) Under the date of September 16,1960, the Honorable John L. McClellan, United States Senator from Arkansas, wrote a letter to the plaintiff, stating in part as follows:
Upon my return to Washington and in accordance with our conversation during my recent trip down-state, I reviewed the file in your appeal to the Civil Service Commission from the termination of your employment at the Little Nock Veterans Administration Hospital.
It is my understanding that the Board of Appeals and Beview reached a final determination in its decision of September 4, 1959, and further refused your request to reopen the case in its letter to you of August 8, 1960.
It appears very likely, therefore, that the Board will not undertake to reconsider unless you are able to submit pertinent new evidence, which was not available to you during the pendency and active consideration of your appeal.
You indicated that you would forward to my office affidavits and other new evidence to support your contention, and if you do so, I will be pleased to look into the matter further.
(b) On September 20,1960, the plaintiff wrote the following letter to Senator McClellan:
In reply to your letter of September 16,1960 relative to my case with the Civil Service Commission, I wish to state that I have discussed the affidavits in question with Ur. Delmar Goode, the former manager of the Veterans Administration Hospital in Little Nock, V. E. McMillion, B. G. Carruth, and Warren Walters.
Mr. Walters will furnish an affidavit at this time (attached) and the other three believe they can give you a better picture of the situation if they discuss it with you first and then give their affidavits.
I have called your secretary and made an appointment for all of us to see you on September 29. Thank you again for your interest in my case.
(c) On September 22, 1960, Senator McClellan wrote the following letter to the plaintiff:
This acknowledges your letter of September 20 with which you attached an affidavit from Mr. Warren Owen Walters of North Little Kock.
As you indicated that you are in the process of obtaining other affidavits, I shall defer any action until, such time as they are received.
*137 I note from your letter that you have made an appointment to see me in tbe downstate office on September 29. I have a speaking engagement in Dallas on that date and do not at this time know just what time I shall arrive in Little Bock. In any event, it may be well for you to consult further with Miss Morgan in the Little Bock office as I shall keep her advised as my schedule develops.
30. (a) Under the date of February 15,1961, the Bishop of Little Bock wrote a letter to the Attorney General of the United States relative to the plaintiff’s case. In the letter, the Bishop expressed the hope that the Attorney General “may see fit to have [the plaintiff’s case] investigated for the sake of fair play and just treatment.”
(b) On February 24,1961, the Attorney General acknowledged the letter from the Bishop of Little Bock and stated (among other things) that the Bishop’s letter had been referred to the attention of Assistant Attorney General William Orrick.
(c) On March 15, 1961, the plaintiff wrote a letter to Assistant Attorney General William H. Orrick, Jr., relative to his case, and enclosed certain documentary material for the consideration of Mr. Orrick. The plaintiff alleged in the letter that his separation from the service was the result of a “frameup” and constituted a violation of the civil service regulations. The plaintiff offered to furnish more information and affidavits, if Mr. Orrick desired to receive them.
31. (a) The letter dated February 15, 1961, from the Bishop of Little Bock to the Attorney General (see finding 30 (a)) was referred to the Veterans Administration. A reply to that letter was written on March 24, 1961, by the Chief Medical Director of the Veterans Administration, who stated as follows:
Your letter of February 15, 1961 to the Attorney General of the United States has been sent to us.
Mr. Boas Gibson, Medical Photographer, GS-7 at our Little Bock Arkansas Hospital, was separated by Beduction in Force on April 30,1959. Due to budgetary limitations, the Manager decided that the position Mr. Gibson incumbered could be surplused and the professional duties performed by a subordinate. The ad *138 ministrative and supervisory duties would be assumed by other management officials.
Mr. Gibson bad formerly been a Medical Photographer, GS-4 at our Memphis Hospital and had resigned to accept a GS-7 position at Little Pock. When Mr. Gibson was surplused at Little Pock he had no retreat rights to the GS-6 position since he had never incumbered a position at this grade level.
At the time Mr. Gibson was separated this entire action was reviewed by the personnel officials in Central Office. Since Mr. Gibson had appealed to the U.S. Civil Service Commission they also reviewed the entire action. It was determined in both of these reviews that Mr. Gibson’s separation by Reduction in Force was proper and in accordance with U.S. Civil Service Commission regulations.
We regret that we cannot give you a more favorable reply.
(b) The Bishop of Little Pock forwarded to the plaintiff on March 28, 1961, the letter of March 24, 1961, from the Chief Medical Director of the Veterans Administration.
(c) On March 31, 1961, the plaintiff wrote the following letter to the Chief Medical Director of the Veterans Administration:
This will acknowledge the receipt of your letter of March 28,1961, addressed to The Most Reverend Albert L. Fletcher, Bishop of Little Pock, relative to my separation by reduction in force from the Veterans Administration Hospital in Little Pock.
Attention is called to line 3, second paragraph your letter — “Reduction in force on April 30, 1959” — there are two people in that department now and have been for two or so years. Furthermore, the photographer who is there now and my erstwhile subordinate, is a GS-8 and will shortly be made a GS-9, so the facts do not show any reduction in force or much savings in salaries; and I may add that administrative and supervisory duties are not assumed by any one at all, any more than they were while I was the head of the department. If you so desired, an honest investigation will prove my statement to be correct.
Two affidavits were sent to Congressman Dale Alford that proved a “frame-up” in my involuntary retirement. One by Mr. Warren Walters, a former employee, and a *139 friend of one of the Personnel Officers who told him that 1 was to be retired, due to an agreement between Mr. Kitchie, the former Assistant Manager, the former Personnel Officer, Vetter, and the now Medical Photographer, Fred Jungkind, as well as Mr. Wharton, now head of the Department of Histopathology.
Your further attention is called to paragraph 3, line 2 of your letter of March 28, 1961 — “. . . resigned to accept a GS-7 position . . .” — tor your information which you apparently do not have, the Personnel Department at Kennedy VA Hospital, Memphis, Tennessee, handled my papers of what I thought was a transfer. I had nothing to do with such a resignation. I did what I was told to do in the matter, again trusting to the honor and honesty of the Civil Service Commission. I understand at the time of my so-called retirement, I could have been given a GS-4 and my subordinate a GS-8 — to accomplish the Personnel Officer’s plan and give me a position also — but this was not offered to me. Two letters have been mailed to Mr. William Orrick, Assistant Attorney General, that will give you a true picture of the case to say nothing of the affidavits that were given Congressman Dale Alford.
Since my forced retirement, I have placed my Form 57, Application For Federal Employment, with two VA Hospitals for the position of Medical Photographer. Both answered that my qualifications were satisfactory but due to the fact that I was not in the VA organization, my applications would not be considered. Had I been kept on the job — as three other department heads were— I would have had an opportunity to take one of the jobs offered. I was the only department head dismissed and not allowed to remain on the payroll until a job could be found for me.
My efficiency ratings for the nine plus years as head of Department of Medical Illustrations were satisfactory and I never received any complaints from any Department in the Hospital.
I am a veteran of World War I and World War II, finishing my military career in Korea in 1948. I was a commissioned officer from 1917.
Your further consideration will be appreciated.
(d) The Chief Medical Director of the Veterans Administration wrote a further letter to the plaintiff under the date of April 13,1961.
*140 (e) On April 21, 1961, the plaintiff wrote the following letter to the Chief Medical Director of the Veterans Administration :
In reply to your letter of April 13 I am just a little amazed at your lack of understanding of my case. You see I was fired, involuntarily retired, due to the fact that my subordinate, Fred Jungkind, now a GS-8, and a Mr. Wharton of the Department of Histopathology, agreed not to bring any medical photographic work or other photographic needs to the Photo Lab while Jungkind was away on leave, telling the interested doctors that I could not do the work requested or needed, but would have to wait until Jungkind’s return. This, of course, put me in a bad light with the then Acting Manager who did not take the trouble to investigate the truth of the conditions which Wharton and Jungkind caused to exist.
My authority for this accusation was admitted to me by Jungkind when I accused him of having heard of the arrangements that he and Wharton had made to discredit me.
Proof of this fact of no work can be found in the daily photographic register which shows that no pictures were made while Jungkind was away. Dr. Carol Shukers, head of the Department of Pathology, was not aware of this condition until I was retired. Yes, I have been trying to get a fair hearing on my case for two years and I will try for two more or until I am told exactly why I was retired. Your statement and the Commission’s statement of “reduction-in-force” can be nothing but a brushoff as there is no reduction involved at all. Jungkind has a clerk who assists him in the photographic work as well as office work — therefore, no reduction in force was made.
Dr. Middleton, I am a veteran of World War I and II, a commissioned officer in both Wars- — -I am no “crank” or “sorehead” — I do feel that I was dismissed unjustly — in fact, railroaded out. I am sure you are a fair man and if you know the facts — justice, if there is such a thing in the Civil Service Commission, will prevail.
(f) On May 3, 1961, the Chief Medical Director of the Veterans Administration wrote the following letter to the plaintiff:
*141 We have your letter of April 21,1961. Your separation two years ago by Seduction in Force was reviewed and found to be in accordance with TJ.S. Civil Service Commission Regulations.
We have no vacancies for Medical Photographer at our hospital hi Little Sock. If you are interested in being reemployed with the Veterans Administration it is suggested that you file an application as outlined in the enclosed Civil Service Announcement. When vacancies occur your name will be certified and you will be given consideration for employment.
We regret that we are unable to give you a more favorable reply.
(g) On May 10, 1961, the plaintiff wrote the following letter to the Chief Medical Director of the Veterans Administration :
This will acknowledge receipt of your letter of May 3, 1961, wherein you state you have no vacancies for Medical Photographer in your hospital in Little Sock. You also enclose Form 57, Application For Federal Employment, should there be an opportunity for employment in this field with the Veterans Administration.
Information is requested as to whether or not the following paragraph on the back of Form 57 — following-item 34 — is enforced:
_ “ATTENTION: If you are appointed, all facts you give will be subject to investigation including a check of your fingerprints. Before signing this application, go back over it to make sure you have answered all questions correctly and fully, so that your eligibility can be decided on the basis of all the facts. Admitted unfavorable information about such matters as arrests or discharges will be considered together with the favorable information in your record in determining your present fitness for Federal employment. However^ a false statement or dishonest answer to any question may he qroimds for cancellation of your application or yoivr dismissed after appointment and is punishable by law. ...”
If this paragraph is enforced, or means anything at all, I can furnish you information to the effect that there is a violation in one of the VA Hospitals here and therefore, a vacancy should exist.
Your kind and prompt attention will be greatly appreciated.
*142 32. (a) Oil May 10, 1961, the plaintiff wrote a letter to Assistant Attorney General Orrick, stating in part as follows:
In my first interview with Mr. Ritchie, Acting Manager, he stated that he was unable to secure funds to pay my salary as a GS-7, Chief of the Medical Illustrations Laboratory; at a later interview, that I was being retired on account of a Eeduction-In-Force; and still later in another interview that I was not capable of doing my work. It seems to me that he was unable to make up his mind as to just how he was going to oust me but he was determined it was going to be done — one way or the other. All the charges were framed and I can prove that they were by affidavits given to Mr. Bun Bray, House Post Office and Civil Service Committee, Washington, D.C. These affidavits were to be forwarded to your office by Mr. Bray and I am wondering if you have received them.
iji Ü* * * *
Thank you for your interest in my case and I trust that I shall hear from you in the near future.
(b) On may 16, 1961, Assistant Attorney General Orrick wrote a letter to the plaintiff, stating in part as follows:
As you know, an earlier request for investigation on your behalf was referred by this Department to the Veterans Administration and you were informed of our subsequent advice that a report on the matter had been made to Reverend Albert L. Fletcher. In view of this action and because several of your communications have been marked “Personal” or “Confidential”, we are in doubt as to whether you would wish Mr. Walters’ statement to be sent to the Veterans Administration. If it is your desire that the statement be given consideration by that agency, it is suggested that you forward it directly.
As you 'have previously been informed? this Department lacks authority to take direct action m this matter. It is regretted that we are unable to be of greater assistance to you.
33. (a) In May of 1961, the plaintiff went to Walnut Ridge, Arkansas, and consulted Lester Gibson, a retired lawyer and a former employee of the United 'States Department of Justice, who was living in Walnut Ridge. The plaintiff informed Lester Gibson about the plaintiff’s prior employment with the Veterans Administration and the aboli *143 tion. of his position; and the plaintiff asked Lester Gibson for assistance. Lester Gibson replied that he expected to make a trip to Washington, D.C., in July, and that if the plaintiff would send him the pertinent file, he would examine the file and then would do what he could to help the plaintiff while he was in Washington.
(b) After the conference referred to in paragraph (a) of this finding, the plaintiff sent to Lester Gibson the file of papers which the plaintiff had accumulated in connection with his separation from the Government service.
(c) Lester Gibson went to Washington, D.C., in July 1961. While in Washington, he went to the Department of Justice and discussed the plaintiff’s case with an employee of that Department. As it appeared that the Department of Justice would not be able to do anything for the plaintiff, Lester Gibson next went to the Veterans Administration and conferred with an assistant to the Administrator.
(d) As Lester Gibson was unable to obtain administrative relief for the plaintiff from the Department of Justice or from the Veterans Administration, he concluded that the plaintiff had two possible remedies, i.e., he might bring congressional pressure to bear on the Veterans Administration in an attempt to secure his reinstatement, and he could file a suit in the United States Court of Claims. Lester Gibson explained this to the plaintiff when the former returned to Arkansas from his trip to Washington, D.C.
34. (a) Following the events referred to in finding 33, the plaintiff employed his present counsel.
(b) The present action was filed in the Court of Claims on April 17,1962.
35. Since the abolition of the plaintiff’s position effective at the close of April 30,1959, Fred Jungkind has, to the satisfaction of the hospital management, operated the Medical Illustration Service at the Veterans Administration Hospital in Little Rock as the only photographer assigned to that unit. He has been aided by a part-time clerk-stenographer, who has worked 2 hours per day.
36. On April 6, 1959, the Veterans Administration Hospital in Little Rock received position classification standards which had been promulgated by the Civil Service Commis *144 sion with, respect to photographer positions, along with instructions that the standards be reviewed and applied within a 6-month period. Thereafter, Fred Jungkind, the medical photographer at the hospital, was requested by the hospital personnel office to prepare a description of the duties which he was performing as medical photographer, and he did so. The hospital personnel office considered the duties and responsibilities outlined in Mr. Jungkind’s position description, and related them to the position classification standards prescribed by the Civil Service Commission. The hospital personnel office concluded that a reclassification of Mr. Jung-kind’s position in Grade GS-8 was proper, and this reclassification was effected on October 4,1959:
37. The plaintiff has been drawing a retirement annuity as á retired civil service employee of the United States since his separation from the Veterans Administration effective at the close of April 30,1959.
38. (a) The plaintiff’s only employment since his separation from the Government service effective at the close of April 30,1959, was with a commercial photographer in Little Nock, Arkansas, for 6 weeks at a salary of $65 per week.
(b) The evidence indicates that, in view of the plaintiff’s age (he was bom on February 24,1894), he exercised reasonable diligence in 'attempting to obtain other employment after Ms separation from the Government service.
CoNolusioN or Law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

We are indebted to Trial Commissioner Mastin G. White for most of the statement of facts, which is taken from his opinion prepared at the direction of the court under Rule 57(a). We depart from his views, however, as to a critical legal issue involved in the case.

 The commissioner continued: “On April 6, 1959, the Veterans Administration Hospital in Little Rock received position classification standards which had been promulgated by the Civil Service Commission with respect to photographer positions, along with instructions that the standards should be reviewed and applied within a 6-month period. Thereafter, when Fred Jungkind was serving as the only medical photographer at the hospital, he was requested by the hospital personel office to prepare a description of the duties which he *109 was performing, and he did so. The hospital personnel office considered the duties and responsibilities outlined in Mr. Jungkind’s position description, and related them to the position classification standards prescribed by the Civil Service Commission. The hospital personnel office concluded that a reclassification of Mr. Jungkind’s position in grade GS-8 was proper, and this reclassification was effected on October 4, 1959.”

 We remember, in this connection, that proof of bad faith on the part of government officials requires especially strong evidence. Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954) ; Keener v. United States, 165 Ct. Cl. 334, 339 (1964).

 The Civil Service Commission so ruled. The Commission also decided that plaintiff had no “retreat” or “bumping” rights, and that point is not now questioned.

 The record contains statistical evidence and oral testimony from which the parties draw different conclusions as to the workload. It is to be noted, however, that, since the abolition of plaintiff’s position in April 1959', Jungkind has operated the Medical Illustration Service as the only photographer assigned to that unit, and this has been accomplished to the satisfaction of the hospital management. (Jungkind has been assisted by a part-time clerk-stenographer who has worked two hours a day.)

 Section 20.6 (“Notice to employees”) of 5 C.1T.R., Part 20 (1961), provided at the revelant time : “(a) Proposed action. Each employee who is to be separated from the rolls * * * under the regulations in this part, shall be given a notice in writing, stating specifically the action proposed in his case and the reasons therefor, at least thirty (30) calendar days, and not more than ninety (90) calendar days in advance of the effective date of the action. * * *”

 The second of these conclusions was based mainly on the fact that abolition of plaintiff’s position, as of April 30, 1959, saved only $242 for the fiscal year 1959 (ending June 30, 1959), since it was necessary to make a lump sum payment to plaintiff for his accumulated and accrued annual leave covering the period from May 1 until June 15, 1959. The commissioner felt that “there is nothing in the record to indicate that this meager saving had any appreciable effect on the hospital’s financial position for the fiscal year 1959, which involved expenditures aggregating some millions of dollars, or that the abolition of this position was required by the prospective financial situation of the hospital for the fiscal year 1960.”
On the other hand, the record contains significant indications that Mr. Ritchie, Acting Manager of the hospital, was moved by budgetary considerations when he ordered the elimination of plaintiff’s job in March 1959. He had, of course, been chairman of the committee which had recommended, some months before, the abolition of Mr. Gibson’s position for budgetary reasons. Mr. Ritchie was budget officer of the hospital before he became Acting Manager, and he had been receiving weekly financial reports indicating an insufficiency of funds for the fiscal year 1959 to support the ongoing program of the hospital. He was concerned over the possibility of incurring a deficit in fiscal 1959, and thereby violating the Anti-Deficiency Statute, 31 U.S.C. § 665.

 His first letter to tlie Civil Service Commission (finding 18) stated (in part) : “If tlie workload warrants tlie reduction of personnel in my unit, a conceded management prerogative, tlien tlie position to abolish would be the junior position, and not the senior position with an obvious transfer of duties to the junior position.” Plaintiff was mistaken in thinking that under the law the junior position was the one which had to be eliminated, but his letter plainly shows that he understood that “reduction of personnel in [his] unit” was a dominant factor in the hospital’s action.

 Although the trial commissioner held that the separation was rendered invalid by the defect he found in the notice, he ruled the plaintiff’s claim barred by laches. We do not reach or consider that defense.