**Paul D. GANDOLA and Noble F. Jones, Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**Appeal No. 85–797.**

United States Court of Appeals, Federal Circuit.

Sept. 19, 1985.

Mark T. Drooks, Wald, Harkrader & Ross, Washington, D.C., argued for petitioners. With him on brief were Marc E. Lackritz and Kenneth G. Jaffe.

Robert G. Giertz, Senior Trial Counsel, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director.

John T. Murphy, Office of General Counsel, Federal Trade Commission, Washington, D.C., of counsel.

Before FRIEDMAN, RICH, and BENNETT, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is a petition to review a decision of the Merit Systems Protection Board (Board) upholding the action of the Federal Trade Commission (the Commission) removing the petitioners from their positions through a reduction in force. 23 M.S.P.R. 383 (1984). We affirm.

I

The petitioner Paul D. Gandola was employed as a general attorney, and the petitioner Noble F. Jones was employed as a consumer protection specialist in the Commission's Cleveland Regional Office. In early 1983 the Commission decided to conduct an agency-wide reorganization because of budgetary constraints. The Commission originally proposed to close four of its regional offices and to reduce the staffs in two other offices. Because of congressional opposition, this plan was abandoned. The Commission adopted a new plan, which the Senate Appropriations Committee specifically authorized, under which the size of each regional office would be reduced to a maximum of 18 employees.

The Board's chief administrative law judge, to whom this case was assigned, found that "[i]n reducing the staff of each regional office to 18 positions, the agency wished to retain a proper skills mix to carry on the work of each office, i.e., an adequate staff of attorney, professional support and clerical personnel." The Commission favored an 18-person staff consisting of 10 attorneys, 3 professional support staff, and 5 clerical people. The Cleveland office had 13 attorneys, 4 consumer protection specialists and 7 clerical employees. The Commission decided to eliminate 4 attorney positions and 2 consumer protection specialist positions through a reduction in force.

In deciding which positions to eliminate in the regional offices, the Commission's director of personnel, Stephen C. Benowitz, discussed the matter with the director of each regional office. In the Cleveland Office he spoke with Barbara Arnold, the acting regional director, about which positions would be abolished. They considered the employees' experience, individual effectiveness and personal abilities in making

this determination. Mr. Benowitz testified that they did not discuss the grade structure of the office.

In the Cleveland office four attorney positions at grades 13 and 12 were eliminated, whereas in all the other regional offices some attorney positions at grades 15 and 14 were eliminated. Both of the petitioners' positions were eliminated. Each petitioner was offered reassignment to a position at the same grade in the Commission's Washington office, but both declined the offer. They were then separated.

The petitioners appealed their removals to the Board. After a consolidated hearing in the two cases, the chief administrative law judge rendered an initial decision holding the removals invalid and ordering the Commission to reinstate the petitioners. The judge found that "a reorganization for budgetary reasons was the real reason underlying the RIF" and that in selecting the employees to be dismissed, the Commission properly followed and applied the governing reduction-in-force regulations, under which employees were removed within their competitive area in the reverse order of their retention standing. He held, however, that the removals were improper because "the agency's decision to abolish particular positions was not based chiefly on reasons recognized as within the area of management's legitimate prerogatives" but rather on the personal qualifications of the incumbents, namely, their length of service with the Commission, their relative abilities, and their past performance.

The Board granted the Commission's petition for review, reversed the initial decision, and upheld the removals. The Board "agree[d]" with the administrative law judge's finding that "a *bona fide* reorganization caused by budgetary considerations was the reason for the RIF" and ruled that the petitioners had presented no evidence that "the reorganization was conducted in bad faith or was used as a disguised adverse action to get rid of them." The Board held that

[o]nce the [presiding official] ascertained that the agency had in fact invoked the RIF regulations for one of the management reasons specified in 5 C.F.R. § 351.-201(a), as they did in this case, the Board had no authority to review the management considerations underlying the exercise of agency discretion.

The Board further ruled that even if it had authority to review the agency's "choice of which positions it could abolish during a RIF," the Commission's action in this case was not improper. The Board stated that "in the absence of bad faith or an 'underhanded scheme' to remove the employee, an agency could consider the comparative qualifications of two noncompeting employees to determine which position to abolish when that decision was made in the interest of office efficiency" (quoting *Gibson v. United States*, 176 Ct.Cl. 102, 109 (1966)).

## II

A reduction in force involves two steps. First, the agency determines which positions to abolish. Second, it selects the people to be eliminated serving in those positions on the basis of their retention standing. In this case, for example, the Commission first decided to eliminate four attorney positions at grades GS–13 and 12 in the Cleveland office, and then selected the four attorneys in those categories to be removed according to the retention credits of all the attorneys at those levels.

Both the administrative law judge and the Board held that in performing the second step the Commission complied with the applicable regulations. The petitioners do not challenge that ruling, and there appears to be no basis upon which they could do so.

The petitioners do challenge the first phase of the Commission's reduction in force process—selection of the positions to be eliminated—on two grounds. They contend (A) that the Commission improperly considered the qualifications of particular employees in deciding which positions to eliminate; and (B) that although the overall reduction in force was instituted for the bona fide reason of budgetary limitations,

the implementation of the program in the Cleveland office was tainted because improper personal motivations rather than legitimate managerial considerations were the basis of the action taken there.

■ A. When an agency is required to reduce its staff through a reduction in force, the agency's primary concern is to insure that the remaining staff will be as well qualified as possible to continue effectively to perform the agency's duties. In deciding which 4 attorney positions to eliminate in the Cleveland office, the Commission was required to determine what would be the best structural organization with only 9 attorneys instead of the 13 previously employed. That decision on the composition and structure of the work force reflects the kind of managerial judgment that is the essence of agency discretion, and is not meet for judicial reevaluation. *Office of Personnel Management, Federal Personnel Manual,* ch. 351.1–5a (1981); *see also Local 2855, AFGE v. United States,* 602 F.2d 574 (3d Cir.1979); *Griffin v. Dept. of Agriculture,* 2 MSPB 335, 337, 2 M.S. P.R. 168, 171 (1980).

■ In determining which positions to eliminate, the Commission appropriately considered the abilities of the existing employees, in order to ascertain the particular organizational structure that offered the greatest likelihood that a smaller staff could effectively continue to perform the agency's mission. The Commission's decision to eliminate four attorney positions at the grade GS–13 and 12 levels rather than at higher levels, because it believed that the higher level attorneys would be best qualified to carry out the responsibilities of the office, was an action within the agency's managerial discretion.

The Court of Claims faced a similar question in *Gibson v. United States,* 176 Ct.Cl. 102 (1966). There the unit involved (in a hospital) consisted of two employees, the chief and the assistant chief. Because the amount of work had declined, the agency decided to eliminate one of the positions through a reduction in force. It eliminated the position of the chief, on the ground that the person in the assistant chief's position could better perform the work of the smaller unit than the chief. The Civil Service Commission upheld the action, and the Court of Claims affirmed. It stated:

It is settled that, absent bad faith or the kind of underhanded scheme the plaintiff asserts, the hospital could decide with propriety to abolish Gibson's job instead of Jungkind's, and could rest that decision on the relative ability of the two men to handle the work by himself.

176 Ct.Cl. at 109, footnote omitted.

We think that principle is equally applicable to the present case. *Gibson* did not turn on the fact that the agency was eliminating one of two positions, but on the broader rationale that in deciding which position to abolish, the agency appropriately considered "the relative ability of the two men to handle the work by himself." Similarly, in the present case it was appropriate for the Commission, in deciding which positions to eliminate in the Cleveland office, to consider the "relative ability" of the remaining employees to "handle the work" by themselves. As we show in part II B, *infra,* the petitioners have not shown that the reduction in force in the Cleveland office involved either "bad faith" or an "underhanded scheme."

The petitioners attempt to distinguish *Gibson* on the ground that that decision was rendered before the Civil Service Reform Act of 1978, which they assert overruled or undermined *Gibson.* They point to nothing, however, in the language or legislative history of that statute or the implementing regulations that specifically bars an agency from considering the abilities of individual employees in determining which positions to eliminate in a reduction in force. We do not agree with the petitioners that either the underlying policy of the Reform Act of protecting employees against arbitrary action or any of the particular provisions upon which they rely, undermines the validity of *Gibson*—a decision which binds us. *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982).

B. The petitioners' argument that the implementation of the reduction in force in the Cleveland office was improperly motivated rests upon three factual items which they contend establishes bad faith:

1. In all of the regional offices other than Cleveland some of the higher grade attorney positions were eliminated; only in Cleveland were no grade 15 or 14 positions abolished. They also point out that the Commission was concerned about "grade creep"—the upward movement of an agency's average grade level—and argue that in light of that concern, it seems strange that in Cleveland, unlike in other offices, the agency passed up the opportunity to combat grade creep by eliminating the higher grade positions.

2. The Commission's director of personnel, Mr. Benowitz, who selected the positions to be eliminated, formerly had worked in the Cleveland office, and was a friend of the senior attorneys there. According to the petitioners, this gave him a motive to protect the senior people at the expense of the junior lawyers.

3. There was hostility between the petitioner Gandola and Ms. Arnold, the acting director of the Cleveland office with whom Mr. Benowitz discussed the positions to be eliminated there. (This argument would not apply to the petitioner Jones, or to the four other junior employees in that office whose positions also were eliminated.)

■ A reduction in force may not be used as a disguised adverse action to remove or demote a particular employee. See Horne v. MSPB, 684 F.2d 155, 159 (D.C.Cir.1982); Fitzgerald v. Hampton, 467 F.2d 755, 758 (D.C.Cir.1972). The Board has held that if an employee is removed through a reduction in force because of dissatisfaction with his performance, the reduction in force is improper with respect to that employee, even though it is valid with respect to other employees. Nichols v. Dept. of Defense, 84 F.M.S.R. 5145. The petitioners' allegation that the decision to abolish their positions was improperly motivated goes directly to the question of the bona fides of the implemen-

tation of the reduction in force in the Cleveland office and to that extent is within the Board's authority to review the agency action. See Liguori v. United States Military Academy, 4 MSPB 100, 101, 4 M.S. P.R. 6, 8 (1980); cf. Keener v. United States, 165 Ct.Cl. 334, 338 (1964).

■ The evidence upon which the petitioners rely does not show that the implementation of the reduction in force in the Cleveland office was done in bad faith or for improper personal motives. To the contrary, as the Board concluded, the reduction in force in Cleveland was taken for an appropriate management consideration— "to reduce the manpower within the ceiling allocation." The fact that higher grade attorneys were eliminated in other offices does not show bad faith in failing to do so in Cleveland, where the situation may have been quite different. The Board found that the petitioners had presented no evidence which showed "that the reorganization was conducted in bad faith or was used as a disguised adverse action to get rid of them."

■ We cannot say that the facts upon which the petitioners rely—consisting largely of suspicion and surmise—were sufficient to overcome the Commission's case that the implementation of the reduction in force in the Cleveland office was for bona fide management considerations. The director of personnel, Mr. Benowitz, testified that the Commission considered the experience and effectiveness of each employee "[i]n attempting to determine what the most effective structure would be for the remaining positions in the office...." Such consideration does not reflect a bad faith scheme to get rid of certain employees under the guise of a reduction in force, but rather a managerial decision made in the interest of office efficiency. Indeed, even the administrative law judge, who reversed the agency action because it "based its selection of positions mainly upon the personal qualifications of the incumbents," recognized that because "the decisions were made in this manner

does not necessarily require an inference that there was bad faith on the part of the agency. Apparently the agency believed that as long as an RIF was necessary, it could just as well separate the least effective employees."

 An agency has wide discretion in conducting a reduction in force. This court will not disturb a reduction in force absent a clear abuse of discretion or a substantial departure from applicable procedures. *Bacon v. Dept. of Housing & Urban Development,* 757 F.2d 265, 268 (Fed.Cir.1985); *Cooper v. Tennessee Valley Authority,* 723 F.2d 1560, 1562 (Fed.Cir.1983). If the agency proves that the reduction in force regulations were invoked for a legitimate reason and that those regulations were properly applied to the individual employees—as was the case here—the agency action will be sustained. *Losure v. Interstate Commerce Commission,* 2 MSPB 361, 365, 2 M.S.P.R. 195, 200 (1980).

## CONCLUSION

The decision of the Merit Systems Protection Board is affirmed.

AFFIRMED.