6 F.3d 787
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Daniel KALASH, Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 93-3274.
 United States Court of Appeals, Federal Circuit.
 Sept. 10, 1993.
 
 Before PLAGER, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 PER CURIAM.
 
 
 1
 Daniel Kalash appeals a decision of the Merit Systems Protection Board sustaining his separation by reduction-in-force (RIF) procedures from the position of Supervisory Medical Officer at the United States Merchant Marine Academy, a part of the Department of Transportation (agency). The Administrative Judge's decision, No. NY0351920510-I-1, became the final decision of the Board when it denied review on March 22, 1993. We affirm.
 
 DISCUSSION
 
 2
 Dr. Kalash had been Supervisory Medical Officer of the Academy since 1981. Despite Dr. Kalash's exceptional performance ratings, the Academy began receiving complaints concerning the administration of its medical facility and, in response, requested that the United States Coast Guard conduct annual reviews. Between 1985 and 1990, the Coast Guard found health care delivery at the facility to be acceptable, but found administrative practices and quality assurance to be deficient. In 1990, the Coast Guard announced that it would conduct reviews only once every three years. Concerned about the reduced level of oversight, the Academy's Superintendent, Rear Admiral Krinsky, obtained an independent study of the medical facility, which concluded that "improvements should be made in the redefinition of the Chief Medical Officer's work responsibilities ... to address a substantial number of [Academy] unmet medically related needs." Krinsky also had a study done of the Coast Guard's medical clinic.
 
 
 3
 Ultimately, Krinsky decided upon a reorganization plan that replaced Dr. Kalash with a part-time, visiting physician from the North Shore University Hospital* staff. Dr. Kalash was separated from the agency under RIF procedures and, with the assistance of the agency, located subsequent government employment. Dr. Kalash appealed his separation to the Board, contending that the reorganization was not "bona fide," was procedurally defective, and was an abuse of the agency's discretion. The AJ found that Dr. Kalash had been separated by a bona fide reorganization that contracted out his duties to the Hospital in an effort to achieve greater assurance in the delivery of quality health care and cost savings, had presented no evidence of any procedural defects in the RIF, and had presented no evidence of actions directed at him personally.
 
 
 4
 Under the Office of Personnel Management (OPM) regulations, an agency may release an employee when required by a "reorganization," which is "the planned elimination, addition, or redistribution of functions or duties in an organization." 5 C.F.R. Secs. 351.201(2), 351.203 (1993). The agency has the burden of proving by a preponderance of the evidence that the RIF regulations were properly invoked because of management considerations of the character appropriately committed to agency discretion. 5 U.S.C. Sec. 7701(c)(1)(B) (1988); Cobb v. Department of Labor, 774 F.2d 475, 477 (Fed.Cir.1985).
 
 
 5
 Dr. Kalash does not argue here that the RIF procedures, once invoked, were not properly applied to him. Rather, he argues that the RIF procedures were not properly invoked at all because the justification for reorganization was not supported by a preponderance of the evidence. Specifically, Dr. Kalash contends, as he did before the Board, that the agency would not achieve its stated purpose of cost savings and improved health care delivery by contracting out his former position to a private physician. Relying on Cobb, supra, Dr. Kalash asserts that the RIF was a mere pretext for his removal.
 
 
 6
 Dr. Kalash's reliance upon Cobb is misplaced. In Cobb, a position was converted from a job-shared government position to a full-time government position, with no attendant change in the position's requirements, duties, and responsibilities. There, we found that such a conversion was not a RIF reorganization because there was no elimination, addition, or redistribution of functions or duties in the organization. Here, a government position was in fact eliminated by the agency's decision to contract out to a private party. The elimination of a position, which is a reorganization, falls within the scope of the RIF regulations. 37 C.F.R. Secs. 351.201(2), 351.203. As such, we do not upset the agency's final decision because there is no clear abuse of discretion, no substantial departure from applicable procedures, and no misconstruction of governing statutes. See, e.g., Cobb, 774 F.2d at 477 (citations omitted).
 
 
 7
 Decisions on the composition and structure of an agency's work force reflect managerial judgment that is the essence of agency discretion, not appropriate for judicial second-guessing. Gandola v. Federal Trade Comm'n, 773 F.2d 308, 311 (Fed.Cir.1985) (citations omitted). While a RIF may not be used as a disguised adverse action to remove a particular employee, the record does not support Dr. Kalash's contention that the implementation of the RIF was done in bad faith or for motives other than the management considerations put forth by the agency. See id. at 312. The agency may decide to eliminate a position in its independent managerial discretion, see Grier v. Department of Health & Human Serv., 750 F.2d 944, 945-46 (Fed.Cir.1984), and we cannot substitute our own judgment for that of the agency. We thus conclude that the Board's determination that the agency properly invoked the RIF procedures was not an abuse of discretion, was not contrary to law, and was supported by substantial evidence. The decision of the Board is affirmed.
 
 
 
 *
 The Hospital is a private medical care facility that was providing back-up services to the Academy under an existing contract