**Patrick KINSELLA, Plaintiff,**

v.

**Donald RUMSFELD, Secretary, Department of Defense, Defendant.**

**No. 5:99–CV–1128 HGM/DEP.**

United States District Court, N.D. New York.

Nov. 16, 2001.

Napierski, Vandenburgh & Napierski, L.L.P. (Shawn F. Brousseau, of counsel), Albany, NY, for Plaintiff.

Joseph A. Pavone, United States Attorney for the Northern District of New York

(William F. Larkin, Asst, U.S. Atty., of counsel), Syracuse, NY, for Defendant.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### FACTS

The plaintiff, Patrick Kinsella, was born with Coloboma of both eyes, rendering him legally blind. His vision, without correction, is 20/600 in his right eye and 20/700 in his left eye. With correction, plaintiff's vision is 20/200 in each eye.

In 1989, plaintiff began working at Rome Laboratories at Griffiss Air Force Base ("Griffiss") as a GS-350-4 copier/duplicator operator ("GS-4") and remained in this position until his termination in 1994 as part of a Reduction in Force ("RIF"). During his employment, he maintained and operated a high-speed Xerox 9900 copier, a Kodak color copier, a stapler/binder, a drill press, and a laser cutter.

On April 2, 1993, plaintiff initially requested EEO counseling for alleged handicap discrimination. Plaintiff claimed that he was discriminated against because he was issued a letter of caution and was threatened with other disciplinary action. On April 12, 1993, plaintiff was advised of his rights and responsibilities and on May 6, 1993, a Notice of Final Interview was issued by the Department of the Navy, Consolidated Civilian Personnel Office. The notice informed plaintiff that he had 15 days in which to file a complaint. On May 13, 1993, the EEO counselor issued a report identifying the issues presented by plaintiff as: (1) he received a letter of caution and was threatened with other disciplinary action; and (2) management was trying to transfer him back to the Air

Force. Plaintiff did not follow up on the Notice of Final Interview and file a formal complaint.

On December 1, 1994, plaintiff requested additional EEO counseling for alleged discrimination on November 28, 1994, when he was told that he did not qualify for a WG-4402-7 bindery machine operator ("WG-7") position during a RIF. On January 12, 1995, plaintiff filed an EEO complaint alleging discrimination based upon a physical handicap of legal blindness.

On February 15, 1995, the Department of the Navy, Defense Printing Service Detachment Office ("DPSDO") issued a letter acknowledging plaintiff's complaint and accepting for investigation the issue of the alleged discrimination occurring when plaintiff was told on November 28, 1994 that he did not qualify for one of the WG-7 positions that would remain at the DPSDO facility at Griffiss following the RIF. Two additional issues were rejected for investigation: (1) management's failure to reclassify plaintiff's position as a GS-4 to a WG-7 because of physical disability discrimination; and (2) an alleged statement made on April 9, 1992 by Robert Feller, plaintiff's supervisor, that "a blind guy is not going to be working at our work site." The rejection was based on the fact that plaintiff raised these issues during the EEO counseling session on April 2, 1993, but failed to file a formal complaint.

On March 22, 1995, plaintiff filed a Notice of Appeal with the Equal Employment Opportunity Commission ("EEOC") appealing the dismissal of the two issues rejected for investigation. By decision of December 19, 1996, the EEOC vacated the DPSDO's decision to dismiss the two issues. Additionally, the EEOC ordered the Defense Automation and Production Service [1] ("DAPS") to conduct a supplemental

---

**1.** At some time during plaintiff's employment, the Defense Printing Service Detachment Of-

investigation to determine whether plaintiff: (1) initially contacted an EEO counselor; (2) failed to timely file a formal complaint; and (3) abandoned the allegations raised in the pre–1994 EEO counseling sessions. Following the additional investigation by DAPS, the EEOC issued a decision dated April 16, 1999 affirming DAPS's dismissal of the two issues originally rejected for investigation. The EEOC concluded that the complained of events occurred more than one year prior to plaintiff's EEO counselor contact, therefore violating EEOC Regulation 29 C.F.R. § 1614.105(a)(1) that requires discrimination complaints to be filed within forty-five days of their occurrence.

On July 21, 1999, plaintiff filed a complaint with this court alleging that: (1) he had been denied promotion and continued employment because of his disability in violation of the Rehabilitation Act; (2) defendant intentionally caused plaintiff to suffer severe emotional distress; and (3) plaintiff suffered lost wages and benefits as a result of his failure to be promoted and/or reclassified.

Currently before this court is defendant's motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to this motion.

## DISCUSSION

### I. Standard for Summary Judgment

The standard for summary judgment is well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). A motion for summary judgment may be granted when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.; United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See id.* at 250–251, 106 S.Ct. at 2511.

Summary judgment is appropriate in discrimination cases for "the salutary pur-

fice ("DPSDO") was re-named the Document Automation and Production Service ("DAPS").

poses of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (1994). The Supreme Court has also recently reiterated that the trial courts should not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

## II Rehabilitation Act Claim

■ Plaintiff claims that defendant discriminated against him on the basis of disability or handicap in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* The Rehabilitation Act prohibits federal employers from discriminating against employees with physical or mental disabilities. 29 U.S.C. § 791. In order to establish a *prima facie* case of discrimination relating to advancement and other terms, conditions and privileges of employment, plaintiff must show that: (1) the employer is subject to the statute under which the claim is brought; (2) he is an individual with a disability within the meaning of the statute in question; (3) he could perform the essential functions of the job, with or without reasonable accommodation; and (4) the adverse employment actions occurred because of plaintiff's disability. *See Dollinger v. State Insurance Fund*, 44 F.Supp.2d 467, 478 (N.D.N.Y.1999).

### A. Applicable Statute

■ As a federal employee, plaintiff may file a claim based on disability discrimination under the Rehabilitation Act. Section 501 of the Rehabilitation Act establishes affirmative action programs for the hiring, placement and advancement of individuals with disabilities. 29 U.S.C. 791(b). The standards used to determine whether this section has been violated are those standards applied under the appropriate provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111 *et seq.* 29 U.S.C. 791(g).

### B. Individual with a Disability

■ Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act. For purposes of the Rehabilitation Act, "individual with a disability" is defined as "any person who—(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).

#### A. Physical Impairment

There is no dispute that plaintiff's congenital colomba is a physical impairment within the meaning of the Rehabilitation Act. *See* 29 C.F.R. § 1630.2(h)(1) (defining "physical impairment" as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: ... special sense organs").

#### B. Substantial Limitation of a Major Life Activity

The term "major life activities" includes functions such as seeing and working. *See* 29 C.F.R. § 1630.2(i). There is no dispute that plaintiff's physical impairment substantially limits his major life activity of seeing, but does not substantially limit his major life activity of working.

### C. Performance of the Essential Functions of the Job

Plaintiff is able to perform the essential job functions of both the GS–4 and the WG–7 positions with reasonable accommodation, but without restrictions. *See* Defendant's Memo, Exhibit L, pp. 69–71. Defendant does not challenge this assertion.

### D. Adverse Employment Action because of Disability

#### A. Failure to Promote

■ Plaintiff has failed to establish a *prima facie* case of discrimination based upon non-promotion. He argues that he was denied reclassification of his position because of disability discrimination and therefore, he could not receive a lateral appointment to a WG–7 position at the time of the RIF.

In order to establish a *prima facie* case of discrimination based on non-promotion, plaintiff must show that he applied for an available position for which he was qualified, but was rejected under circumstances that give rise to an inference of unlawful discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff must allege that he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions that he generally requested promotion. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998).

In the present case, plaintiff has failed to show that he applied for a specific position and was rejected. Plaintiff is unable to establish that he specifically applied for a WG–7 position and that another candidate filled the position. In fact, plaintiff is unable to state how many WG–7 positions became available during his employment or the identity of the individuals who were hired for those available positions. *See* Defendant's Memo, Exhibit L, pp. 53, 56. Additionally, John Peterson, in his declaration, states that "[a]t no time did I see any application from [plaintiff] for any vacancy." Defendant's Memo, Exhibit N, paragraph 11. In his position as Director of DPSDO and later, DAPS, he would have reviewed all job recommendations and selections prior to submission to the Human Resource Office, and would have seen all applications, even those from non-successful candidates. *See id.* Taking the aforementioned statements into consideration, plaintiff has failed to establish that he applied for a specific position and was rejected.

Plaintiff has demonstrated that he made multiple verbal requests to Bob Voisine, his supervisor, for a reclassification of his position from GS–4 to WG–7. *See* Brousseau Affidavit, Exhibit B, p. 26. However, plaintiff failed to make any formal written requests to have his position reclassified. *See* Defendant's Memo, Exhibit L, p. 28. Also, plaintiff failed to request an audit on his assigned duties to see whether they merited a higher paying grade. *See* Defendant's Memo, Exhibit O, paragraph 10. If a request for an audit had been made, a personnel specialist would have reviewed plaintiff's duties and determined if his position should have been reclassified. *Id.* After an examination of plaintiff's efforts to apply for a specific position, the court finds that plaintiff has failed to establish a *prima facie* case of discrimination based upon non-promotion.

#### B. Termination of Employment

■ Plaintiff has failed to establish a *prima facie* case of discrimination based upon the termination of his employment. Plaintiff claims that he was dismissed from his position because of disability discrimination and not because of a legitimate

RIF, as argued by defendant. In support of his claim, plaintiff alleges that the RIF was organized, designed, and implemented by Mr. Peterson and Michael Blanks, individuals accused of discrimination by plaintiff. Additionally, plaintiff claims that all of the other employees that formerly worked in the print shop with him were placed in new positions at the facility.

An agency, such as DAPS, is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated. *See* 5 C.F.R. § 351.201(a)(1). This includes determining when there is a surplus of employees at a particular location in a particular line of work. *See id.* A RIF is permissible for justifications such as: lack of work; shortage of funds; reorganization; or reclassification of an employee's position due to erosion of duties. *See* 5 C.F.R. § 351.201(a)(2). Once the need for a RIF is established, there are two procedural steps: (1) the agency determines which positions to abolish; and (2) it elects the people to be eliminated serving in those positions on the basis of their retention standing. *See Gandola v. Federal Trade Comm'n*, 773 F.2d 308, 310 (Fed.Cir.1985). If an agency is able to demonstrate that the RIF regulations were invoked for a legitimate reason and that those regulations were properly applied to the individual employee, the agency action will be sustained. *See id.* at 313.

In October of 1993, Mr. Peterson and his office assumed responsibility for the printing and copying facilities at Griffiss. *See* Defendant's Memo, Exhibit N, paragraph 2. At that time, Mr. Peterson analyzed the production and efficiency reports of the facilities and discovered that it was losing a considerable amount of money. *See id.* at paragraph 3.

In January of 1994, Mr. Peterson visited the employees of the facilities and reviewed with them copies of the production efficiency reports that reflected that they were operating at less than 40% efficiency. *See id.* at paragraph 4. Three months later, a review of the production reports revealed that the efficiency of the facilities had not improved. *See id.* at paragraph 5. Mr. Peterson returned to the Griffiss facilities and advised the employees that a reorganization through a RIF was necessary to increase the efficiency rate. *See id.* Such an increase would be achieved through the elimination of positions, consolidation of the two facilities, and the reduction of salary expense. *See id.*

On October 18, 1994, DAPS received authorization to conduct the RIF, which involved the elimination of all of the eight positions at the Griffiss facilities and the establishment of three new positions. *See id.* at paragraph 7. Plaintiff's position was one of the eight that were eliminated.

Plaintiff's essential claim is, absent disability discrimination, he would have been eligible for a lateral transfer as a WG–7 to one of the three new positions at the facilities and would not have lost his job. However, such a claim fails because it overlooks RIF regulations that determine which employees retain jobs and which are separated from service. Competing employees are classified for retention purposes on the basis of their tenure of employment, veteran preference, tenure, qualifications to performing a remaining job, and performance appraisals. *See* 5 C.F.R. § 351.501.

The Human Resource Office applied the retention factors to the eight employees at the Griffiss facilities. As a result, Robert Voisine, Frank Loomis, Jr., and Timothy Jones were entitled to remain in positions at the Griffiss facilities. Mr. Voisine was a veteran who had began working for the

federal government on May 16, 1979 and had better performance ratings than plaintiff. *See* Defendant's Memo, Exhibit N, paragraph 9. Likewise, Mr. Loomis was a veteran who started working for the federal government on April 24, 1984 and had better performance ratings than plaintiff. *See id.* Finally, Mr. Jones, while not a veteran, had more seniority and better performance than plaintiff. *See id.* In contrast, plaintiff was not a veteran, began his federal service on July 7, 1986, and had lower performance ratings than the three individuals who were retained to work in the Griffiss facilities.

Plaintiff also claims that he was discriminated against because the other four employees whose positions were eliminated— Debbie Boudreau, Diane Peters, Gary Stauty, and Steven Recchio—were subsequently rehired by defendant. Following the RIF, Ms. Boudreau was hired by the Defense Finance and Accounting Service ("DFAS"). *See* Defendant's Memo, Exhibit O, paragraph 6. Ms. Peters, Mr. Stauty, and Mr. Recchio also were hired by DFAS at some time following the RIF. *See* Brousseau Affidavit, Exhibit E, pp. 25–26. DFAS is a Department of Defense organization that is separate from DAPS—it has a separate management, its own appropriations, a separate personnel office, and a distinctly different mission. *See* Defendant's Memo, Exhibit O, paragraph 6. As such, any decision by a member of DFAS to hire a former employee of DAPS was made independently from DAPS and was not affected by any alleged discrimination by Mr. Peterson or any other employee of DAPS. *See* Defendant's Memo, Exhibit O, paragraph 9. The decision to staff and operate a duplicating facility at DFAS was made after the RIF was complete. *See id.* At the time of the RIF, the duplicating requirements for DFAS did not exist, so there were no positions that Mr. Peterson could have offered the employees that were affected by the RIF. *See id.*

After an examination of the facts of the case, the court finds that plaintiff has failed to establish a *prima facie* case of discrimination based upon the termination of his employment. Mr. Peterson initiated the RIF procedures for a legitimate reason, namely to increase production efficiency at the DAPS facility at Griffiss. As a result of the RIF procedures, three positions remained at the DAPS facility and those positions were filled in compliance with the required retention factors. Plaintiff does not dispute this conclusion. The remaining former employees were hired by DFAS, a Department of Defense organization that operated independently of DAPS. Therefore, plaintiff has failed to demonstrate that his dismissal from the DAPS facility as a result of the RIF was the result of disability discrimination.

III. Intentional Infliction of Emotional Distress Claim

 Under New York law, a claim for intentional infliction of emotional distress requires a showing of: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999). Whether the conduct alleged may be reasonably regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance. *See id.* A litigant can establish a cognizable claim for intentional infliction of emotional distress "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized society." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (internal citations omitted). The requirements for satisfying a claim for intentional infliction of emotional distress "are rigorous, and difficult to satisfy." *Id.* Therefore, courts must decline such a claim in cases where the alleged conduct was not sufficiently outrageous. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996).

 Plaintiff claims that defendant's alleged failure to reassign plaintiff to a WG–7 position, as well as alleged statements and actions taken by defendant's employees, are sufficient for a successful cause of action for intentional infliction of emotional distress. The court disagrees. In the foregoing analysis, the court determined that plaintiff failed to establish a *prima facie* case of disability discrimination. Recognizing this, the court cannot conclude that defendant's actions rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," when they were insufficient to support a claim of disability discrimination. Therefore, plaintiff has failed to prove his claim for intentional infliction of emotional distress.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that defendant's motion for summary judgment is **GRANTED** and the complaint is hereby **DISMISSED** in its entirety. It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**